**In re Sabino J. MAVELLIA, a/k/a Jerry Mavellia, Debtor.**

**Bankruptcy No. 091–72003–21.**

United States Bankruptcy Court,
E.D. New York.

Dec. 4, 1991.

Stephen P. Gelfand, Zinker & Gelfand, Smithtown, NY

Joseph C. Savino, Wickham, Wickham & Bressler, Mattituck, NY

U.S. Trustee, E.D.N.Y. Scott Stuart.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Sabino J. Mavellia, named as a debtor in this involuntary Chapter 7 proceeding, is moving, pursuant to 11 U.S.C. §§ 105, 303 and Federal Rules of Bankruptcy Procedure 1011, 7004 and 9013, and Rules 12 and 56 of the Federal Rules of Civil Procedure, to dismiss the petition. Such relief is asked on the grounds: (1) that the petitioning creditor, North Fork Bank and Trust Company ("North Fork") does not qualify as such because its claim against Mavellia is both contingent and disputed; (2) Mavellia has twelve or more creditors, so that three creditors would have had to join in the petition which they have not; (3) the summons was not served within ten days of issuance which the movant claims is required by Fed.R.Bankr.P. 7004; (4) the complaint fails to state a claim because it is not alleged that Mavellia has fewer than twelve creditors.

North Fork, the petitioning creditor, denies that its claim against the debtor is either disputed or contingent; it alleges that it had no knowledge of the existence of any more than ten creditors at the time it prepared its petition; it concedes that service was not made until fifteen days after issuance of the summons, but attributes the delay to the avoidance of service by the debtor and requests that the Court enter an order authorizing reservice.

11 U.S.C. § 303 authorizes an involuntary case under Chapter 7 to be brought against a person who may be a debtor under that chapter. An involuntary case can be commenced by the filing of a petition under Chapter 7 by a single creditor if there are fewer than twelve such creditors, or by three or more if there are more than twelve creditors. Each petitioning creditor

must be "a holder of a claim.... that is not contingent as to liability or the subject of a bona fide dispute." 11 U.S.C. § 303(b). After a petition is filed, but before the case is dismissed or relief ordered, other creditors may join in the petition. 11 U.S.C. § 303(c). The claims of the filing creditors must aggregate at least $5,000 more than the value of any liens they hold. 11 U.S.C. § 303(b)(1).

### Service

Federal Rule of Bankruptcy Procedure 1010 provides that on the filing of an involuntary petition, the clerk shall issue a summons which, together with a copy of the petition, shall be served on the Debtor in the manner provided for service of a summons and complaint by FRBP 7004(a) or (b). It also provides that FRBP 7004(f) applies when service is made or attempted under FRBP 1010.

FRBP 7004(a) makes applicable to adversary proceedings various subdivisions of Rule 4 of the Federal Rules of Civil Procedure including subdivisions (d) and (j). Subdivision (j) imposes a 120 day time limit. It provides that if service of the summons and complaint is not made within 120 days after the filing of the complaint and the party who failed to make such service cannot show good cause for the delay, the action is to be dismissed without prejudice upon the court's own initiative or upon motion. By contrast, FRBP 7004(f) speaks of a ten day limit. Rule 7004(f) states that if service is made pursuant to FRCP 4(d) it shall be made by delivery of the summons and complaint within ten days following issuance of the summons. If service is made by any authorized form of mail, the summons and complaint shall be deposited in the mail within ten days following issuance of the summons. If a summons is not timely delivered or mailed, another summons shall be issued and served.

■ The difference between the time periods fixed by these Rules leaves unclear whether the failure to serve the summons within ten days after its issuance is fatal to the petitioning creditor. In another context, it was held that it was consistent with the Rules to permit another summons to issue where the ten day limit was not met. *In re Dahowski*, 48 B.R. 877 (Bankr. S.D.N.Y.1985). The court held that service of a re-issued summons and complaint after the time to file a complaint under 11 U.S.C. § 523 had expired did not affect the timeliness of the complaint, and stated that the delay in service did not violate FRBP 7004(f) since "although the rule requires that a summons be served ten days from issuance, the rule also states that if a summons is not timely served another shall be issued and served." *Id.* at 885. The issuance of another summons will allow service consistent with the Rules. The Court therefore is granting relief sought by North Fork with respect to this branch of Mavellia's motion and is signing an Order which will allow another summons to be issued and served on Mavellia.

### Compliance with 11 U.S.C. § 303

■ More troublesome is the fact that the petitioning creditor is unable to dispute the Debtor's claim that he has seventeen creditors. It is irrelevant that North Fork could not have known that fact at the time it filed its petition and that it in good faith believed the Debtor to have fewer than twelve creditors. The statute is written in absolute terms. Good faith or lack of a good faith is immaterial to the right of a single creditor to force a debtor with three or more creditors into involuntary bankruptcy. However, good faith obviously might provide protection from a claim under Federal Rule of Bankruptcy Procedure 9011 by the Debtor against the petitioning creditor. But the absence of the requisite number of creditors might be cured were North Fork Bank able to induce two other creditors to join its petition. Thus, the issue upon which the present motion turns is whether or not North Fork is qualified to file an involuntary petition. It is not if its claim is either contingent or disputed. 11 U.S.C. § 303(b)(1).

The Debtor maintains that North Fork is disqualified on both counts since its claims are both contingent and disputed. The Debtor maintains they are contingent be-

cause they arise out of guaranties of the indebtedness of a corporation, Harbor Towne Properties, Ltd. ("Harbor Towne"), and that only if the properties held by Harbor Towne on which North Fork is seeking to foreclose are insufficient to satisfy the obligations of Harbor Towne will he become liable on his guaranties. He also asserts that North Fork's claims are disputed and as proof thereof annexes the denials he has interposed in various foreclosure proceedings brought by North Fork against Harbor Towne and himself. In these pleadings he has interposed various affirmative defenses, including partial payment; bad faith on the part of North Fork in making the loan; "oppressive and unconscionable conduct" by North Fork; estoppel in that North Fork's conduct has substantially increased the amount claimed due by it; and waiver by North Fork of its right to collection and foreclosure "by engagin [sic] in a continuous series of transactions intended to relieve [North Fork] of regulatory liability by advancing funds to the [Debtor] so as to relieve the [Debtor] of arrears status."

◼ Prior to the 1984 Amendments, a creditor only had to meet the requirement that his claim not be contingent as to liability in order to file an involuntary petition. The statement of what constitutes a contingent debt which has received universal acceptance by the bankruptcy courts, including courts within this Circuit, is:

> [C]laims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.

*In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), *affirmed*, 646 F.2d 193 (5th Cir.1981), (cited with approval by Circuit Judge Friendly in *In re B.D. International Discount Corp.*, 701 F.2d 1071, 1073 n. 2 (2nd Cir.1983); *In re Chateaugay Corp.*, 115 B.R. 760, 775 (Bankr.S.D.N.Y.1990); *In re Nargassans*, 103 B.R. 446, 451 (Bankr.S.D.N.Y.1989); *In re Ross*, 63 B.R. 951, 958 (Bankr.S.D.N.Y. 1986).

◼ As the Court in *All Media Properties* pointed out, "in the case of the classic contingent liability of a guarantor of a promissory note executed by a third party, both the creditor and guarantor knew there would be liability only if the principal maker defaulted. No obligation arises until such default." 5 B.R. at 133. Thus, if Mavellia's debts to North Fork is solely that of a guarantor, North Fork cannot qualify as a petitioning creditor. However, it is far from clear that Mavellia is liable only as a guarantor. The parties will have an opportunity to clarify the matter since the Court is reopening the hearing on the motion to dismiss. Although the bulk of the claims held by North Fork against Mavellia appear to be contingent, that is not necessarily true of a note in the principal sum of $400,000 secured by a mortgage on Mavellia's personal property.

◼ Assuming that at least one of the claims of North Fork against Mavellia is not contingent, are they all disputed? The Bankruptcy Code was purposefully amended in 1984 to disqualify a person holding a disputed debt from being a petitioning creditor. The change in the law was intended to make it clear "that claims in bona fide dispute are to be excluded for purposes of calculating the number of petitioning creditors and determining whether a debtor is generally not paying its debts." 2 Collier on Bankruptcy ¶ 303.08[11][c] p. 303–38 (15th ed. 1991).

The addition of the language disqualifying a creditor with a disputed claim from filing an involuntary petition was explained by its proponent as follows:

> The problem can be explained simply. Some courts have interpreted section 303's language on a debtor's general failure to pay debts as allowing the filing of involuntary petitions and the granting of involuntary relief even when the debtor's reason for not paying is a legitimate and good-faith dispute over his or her liability. This interpretation allows creditors

to use the Bankruptcy Code as a club against debtors who have bona fide questions about their liability, but who would rather pay up than suffer the stigma of involuntary bankruptcy proceedings.

My amendment would correct this problem. Under my amendment, the original filing of an involuntary petition could not be based on debts that are the subject of a good-faith dispute between the debtor and his or her creditors. In the same vein, the granting of an order of relief could not be premised solely on the failure of a debtor to pay debts that were legitimately contested as to liability or amount.

I believe this amendment, although a simple one, is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of coercion. I also believe it corrects a judicial misinterpretation of existing law and congressional intent as to the proper basis for granting involuntary relief.

130 Cong.Rec. S7618. (June 19, 1984) (Comments of Senator Baucus) (*quoted in In re Henry*, 52 B.R. 8, 9–10 (Bankr.S.D.Ohio 1985)).

As a scholarly commentator has pointed out, the result of what purported to be an attempt at clarification has been almost the opposite: "... an unfortunate and ironic by-product of the 1984 Act's amendments to section 303 has been the replacement of prior judicial disagreement over the treatment of disputed debts with an even greater divergence of opinion over the guidelines for identifying the presence or absence of a bona fide dispute." Lawrence Ponoroff, *Involuntary Bankruptcy and the Bona Fides of a Bona Fide Dispute*, 65 Ind.L.J. 315 (1990).

■ The Courts which have considered the matter have apparently not viewed the existence of ongoing litigation as alone establishing the existence of a bona fide dispute. *See, e.g., In re Drexler*, 56 B.R. 960 (Bankr.S.D.N.Y.1986). A definition of a disputed debt which has gained wide acceptance is that given in *In re Lough*, 57 B.R. 993 (Bankr.E.D.Mich.1986). The court there rejected as a test whether or not the

petitioning creditor would be entitled to summary judgment on his claim and did so because that test does not fully address the case where there is a substantial dispute as to the law. It laid down as the test to be applied: "If there is a bona fide dispute as to either the law or the facts, then the creditor does not qualify and the petition must be dismissed.... Accordingly, if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed." 57 B.R. at 997.

■ As the Eighth Circuit recently pointed out, the three Circuit Courts of Appeal before it that have addressed this issue, have adopted substantially similar tests as that enunciated in *In re Lough* for determining the existence of a bona fide dispute. The Eighth did likewise, making four Courts of Appeal which agree with *Lough*. *In re Rimell*, 946 F.2d 1363 (8th Cir.1991); *see also, In re Busick*, 831 F.2d 745, 750 (7th Cir.1987); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1544 (10th Cir.1988) (*quoting Busick*); *B.D.W. Assoc., Inc. v. Busy Beaver Bldg. Centers, Inc.*, 865 F.2d 65, 66–67 (3rd Cir.1989) (*citing Busick*, 831 F.2d at 750). What this means in practice is described in the Eighth Circuit's Opinion:

In applying this standard, the petitioning creditor must establish a prima facie case that no bona fide dispute exists. Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist. Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden. The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute. This does not mean that the bankruptcy court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the bankruptcy court may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective

legal basis for the dispute exists. Finally, because the determination as to whether a dispute is bona fide will often depend (as it did in this case) upon an assessment of witnesses' credibilities and other factual considerations, the bankruptcy court's determination in this regard is a factual finding that may be overturned on appeal only if it is clearly erroneous. *See* Bankruptcy Rule 8013. *In re Rimell*, 946 F.2d 1363 (8th Cir.1991) (citations omitted).

The Court cannot determine from the papers before it whether there is an objective legal basis in either the facts or the law with for Mavellia to dispute North Fork's claim. Therefore, although the Court will not undertake to resolve the dispute, it will follow the procedure approved by the Eighth Circuit and will conduct a limited analysis of the factual and legal issues in order to ascertain whether an objective legal basis for a dispute exists. Accordingly, it is reopening the hearing on Mavellia's motion to dismiss. The reopened hearing will be held on *January 7, 1992 at 11:00 a.m.*, at the United States Bankruptcy Courthouse, 601 Veterans Memorial Highway, Hauppauge, New York, provided that before that date two or more creditors of Mavellia join in the petition.