In re Brenda CRAIN, Debtor.

In re B & B VEHICLE SALES, INC., Debtor.

Bankruptcy Nos. 96–10047, 96–10142.

United States Bankruptcy Court, S.D. Alabama, Southern Division.

March 25, 1996.

Ralph Loveless, Mobile, AL, for Debtor Brenda Crain.

James M. Scroggins, for Debtor B & B Vehicle Sales, Inc.

Catherine Filhiol Golden, for Gulf Chrysler–Plymouth–Dodge.

## ORDER

WILLIAM S. SHULMAN, Bankruptcy Judge.

This matter came on for hearing on the Involuntary Petitions of Gulf Chrysler–Plymouth–Dodge, Inc. for orders of relief in the above styled cases. Appearances were as noted in the record. And it appearing to the Court from the testimony taken at said hearing, the testimony taken at the hearing to appoint interim trustees which was incorporated by agreement into this hearing, and documentary evidence presented at both hearings, that the petitions are due to be granted for the reasons I will set forth.

### FINDINGS OF FACT

The above styled involuntary proceedings were filed by Gulf Chrysler–Plymouth–Dodge (hereinafter referred to as Gulf Chrysler) on January 4, 1996 as to Brenda Crain and January 11, 1996 as to B & B Vehicles Sales, Inc., and thereafter consolidated for hearing. Prior to the filing of the petitions, Brenda Crain (hereinafter referred to as Crain or Mrs. Crain) was employed by Gulf Chrysler from late 1991 until December 12, 1995 as officer manager and controller, where she handled or supervised all in-house bookkeeping, including paying bills, collecting receivables, and reconciling bank statements. She was authorized to sign checks and pay the legitimate bills of Gulf Chrysler. For the calendar year 1995, Gulf Chrysler paid Mrs. Crain $33,000.00. Mrs. Crain has over 20 years of bookkeeping and accounting experience in the automotive industry.

On April 26, 1993, Crain and her husband, Billy Crain, formed B & B Vehicles Sales, Inc. (hereinafter referred to as B & B) to conduct the business of buying and selling used automobiles. Mr. Crain was responsi-

ble for the actual buying and selling of the automobiles, while Mrs. Crain was responsible for paying the bills and all bookkeeping. She was an officer and director of B & B and was authorized to sign checks and pay bills. Neither Mr. or Mrs. Crain drew a salary from B & B. Their personal living expenses were paid out of one of several personal and/or corporate checking accounts with money from B & B which was deposited into the applicable account as needed. Oftentimes, checks for personal or household expenses were written directly out of B & B's corporate checking accounts. Mrs. Crain tried to keep a separate accounting of the personal expenses and attribute them as salary at the end of the year for income tax purposes. While the Court finds their testimony incredible and hard to believe, neither Mr. or Mrs. Crain knew how much money B & B made, nor did they know what their household income or expenses were. Mr. Crain personally purchases the inventory for B & B, yet he has no idea how much he spent on inventory monthly as recently as February, 1996. Additionally, Mrs. Crain testified that she did not prepare the income tax returns for B & B, however, Mr. Crain testified that she did. Mrs. Crain resigned as an officer and director of B & B on February 27, 1996, after the involuntaries were filed and prior to the hearings.

On December 7, 1995, Gulf Chrysler discovered through an audit that it was "out of trust" approximately $450,000.00 with Chrysler Credit Corporation. David Blanchard (hereinafter referred to as Blanchard), Owner and President of Gulf Chrysler, met with representatives of Chrysler Credit and Mrs. Crain, as well as Gulf Chrysler's CPA, Wilber Bradford to review the audit and begin conducting a cash proof. It had been Mrs. Crain's responsibility to pay Chrysler Credit for the automobiles sold by Gulf Chrysler.

Blanchard testified that on December 8, 1995, at Mrs. Crain's request, he met with her alone in his office where she informed him that she wrote Gulf Chrysler checks to herself causing the "out of trust" situation. She then began working with Gulf Chrysler to verify this information and to produce a missing check list. When asked by Mr. Blanchard where the money had gone, Mrs. Crain replied that it could be in inventory, but that most of it was gone. She resigned from Gulf Chrysler on December 12, 1995. At a later meeting in the offices of the attorneys for Gulf Chrysler, Mr. Crain apologized for what had happened and promised to pay the money back.[1]

Plaintiff's Exhibit 1 from the hearing to appoint an interim trustee (hereinafter referred to hearing one), which is the same as Plaintiff's Exhibit 6 from the instant hearing (hereinafter referred to as hearing two), is a ledger of missing checks, photo copies provided by AmSouth Bank of the missing checks, and a chart showing the name on the photo copy checks, the corresponding name on the check as shown on the in house ledger, the date the check cleared the bank, the check number, and the amount. Plaintiff's Exhibit 2 from hearing one is a summary of all the missing checks after legitimate checks were taken out of the first exhibit referred to above. It shows a total of $740,090.25 in checks written over a three year period to B & B. Plaintiff's Exhibit 3 from hearing one comprises copies of the original checks to B & B. The backs of these checks are endorsed with a stamp "FOR DEPOSIT ONLY" at Compass Bank,[2] where one of three or four corporate or personal checking accounts was maintained. The corresponding in-house copies of the checks were made payable to legitimate Gulf Chrysler vendors in an attempt to conceal Mrs. Crain's actions. All of the missing checks were signed by Mrs. Crain. Plaintiff's Exhibit 4 from hear-

1. Although the testimony regarding Mr. Crain's statements at this meeting were objected to and sustained at hearing two, there were no objections regarding his statements at this meeting made at hearing one.

2. Compass Bank was one of three banking institutions used for corporate and/or personal checking accounts. Compass Bank had a B & B checking account. Magnolia Federal had a joint personal and corporate account. First Alabama Bank had a corporate account. Mrs. Crain was authorized to write checks on all three accounts. There is also a personal checking account at Colonial Bank and an account at AmSouth Bank that was closed in December, 1995.

ing one is a balance sheet of Gulf Chrysler as of November 1995 prepared by Mrs. Crain. In the column headed "other receivables" it contains the amount of $565,877.00 representing the figure derived by Mrs. Crain as being the amount she owed to Gulf Chrysler; however, she indicated to Mr. Blanchard that the amount was actually higher than that reflected on the exhibit.

As stated above, Gulf Chrysler initiated the instant involuntary petitions. It is the only petitioning creditor in both cases. In their answers, both Crain and B & B provided a list of more than twelve creditors existing on the date the petitions were filed. They also alleged that they were paying their debts as they came due and that a bona fide dispute existed as to the alleged indebtedness of Gulf Chrysler. Since the filing of the petitions, all or substantially all of Crain and B & B's pre-petition debts have been paid resulting in no or fewer than 12 creditors (excluding Gulf Chrysler) of each. Plaintiff's Exhibit 2 from hearing two indicates that B & B's creditors were paid approximately four days after the involuntary petition was filed. Crain's debts were paid shortly after her involuntary petition was filed. In fact, both Crain and B & B both now allege that Gulf Chrysler is a sole petitioning creditor, and is the only creditor not being paid. Additionally, Mrs. Crain testified that B & B had an outstanding obligation in the amount of $2,000.00 to Gulf Chrysler since June 27, 1995 for the purchase of inventory. This obligation was paid by B & B by credit card on January 16, 1996. B & B continues to maintain that its obligation to Gulf Chrysler resulting from Mrs. Crain's activities is subject to a bona fide dispute, although it has introduced no testimony or other evidence to support such a finding other than its attorney's statements, which of course are not evidence to be considered. Crain has pleaded affirmatively that she will not offer any evidence to rebut the "no bona fide dispute allegation" as to her.

Among the assets available of Mrs. Crain appear to be at least a one-half interest in an income tax refund owing from the State of Mississippi in the approximate amount of $42,000.00 [3] and a one-half interest in the equity in her homeplace. Among the assets available of B & B appear to be the inventory and accounts receivable in the approximate amount of $125,000.00 to $150,000.00. Other than the $2,000.00 credit card payment made to Gulf Chrysler by B & B for inventory, none of the money owed to Gulf Chrysler has been paid.

### CONCLUSIONS OF LAW

As provided for in 11 U.S.C. § 303, an involuntary case may be commenced under Chapter 7 of the Code against any person that may be a debtor under that chapter. Generally, if there are twelve or more qualified creditors of the debtor holding unsecured claims totalling more than $10,000.00, the petition must be brought by three or more creditors. The petitioning creditors must prove that the debtor is generally not paying its debts as they become due and that the debts are not the subject of a bona fide dispute. 11 U.S.C. § 303(b)(1).

If the debtor has fewer than twelve creditors, an involuntary petition may be brought by one creditor. In determining if there are twelve such creditors, a creditor will not be counted if the creditor is an insider or an employee of the debtor or if the creditor is a transferee of a transfer voidable under 11 U.S.C. § 544, 545, 547, 548, 549, or 724(a). 11 U.S.C. § 303(b)(2).

Both Crain and B & B listed more than twelve creditors on their answers. The parties are in agreement that all of the creditors of both debtors, with the exception of the instant debt owing to Gulf Chrysler, were paid in full or on account shortly after the petitions were filed and cannot be counted, thus creating the need for only one petitioning creditor. *See generally, In re Rimell,* 111 B.R. 250, 254–55 (Bankr.E.D.Mo.1990), *aff'd, Rimell v. Mark Twain Bank,* 946 F.2d 1363 (8th Cir.1991); *In re Garland Coal &*

---

**3.** Neither Mr. or Mrs. Crain are or have been employed in the State of Mississippi. Mrs. Crain admitted that the tax refund was from the gaming casinos which held out five percent. It is clear from the testimony that either Mr. or Mrs. Crain or both spend a significant amount of time at the gaming casinos in Mississippi and have won and lost a substantial amount of money.

*Mining Co.,* 67 B.R. 514, 519–20 (Bankr. W.D.Ark.1986). The parties are also in agreement that both the debtors are generally "paying such debtor's debts as such debts become due," with the exception of the debt to Gulf Chrysler. In fact, both debtors now argue that Gulf Chrysler is a "sole petitioning creditor."[4]

 It is clear that in Crain's case, Gulf Chrysler is a qualified petitioning creditor as there are less than twelve creditors and she is not controverting the evidence presented that her obligation to Gulf Chrysler is not subject to a bona fide dispute. This is not the case with B & B. It maintains not only that its obligation is subject to a bona fide dispute, but also that Gulf Chrysler is not a qualified petitioning creditor. As to the bona fide dispute issue, B & B alleged in its pleadings that it disputed the debt. Its counsel stated at the hearing during oral argument on its motion to dismiss that it disputed the debt. However, the uncontroverted evidence shows that Mrs. Crain, at a time when she was an officer, director, and employee of B & B, transferred large sums of money, without authority, from Gulf Chrysler into the checking account of B & B. The uncontroverted evidence also shows that both the personal expenses of Mr. and Mrs. Crain as well as the corporate expenses of B & B were paid out of this account or with money from this account transferred to other accounts. Domination of a subservient corporation is indicated "... where the corporation maintains no [separate and distinct] corporate bank account, ... where corporate and personal funds are intermingled, or corporate funds are used for personal purposes, or where an individual drains funds from the corporation." When this happens, the corporate form may be disregarded. *See generally, In re Coala, Inc.,* 182 B.R. 887, 895–96 (Bankr. N.D.Ala.1995). *See also, Matter of Commonweal, Inc.,* 171 B.R. 405, 410 (Bankr.M.D.Fla. 1994); Billy Crain, B & B President, alleged-

ly left the entire financial running of B & B to Mrs. Crain; she had complete authority to pay bills and bind the corporation with her acts. However, he has not offered any testimony or other evidence to rebut the intermingling of funds or to show that he was unaware of what was going on. "Once the petitioning creditor established a prima facie case that its claim is not subject to a bona fide dispute, the burden shifts to the debtor to present evidence of a bona fide dispute.... Under this objective approach, the debtor's subjective intent does not control whether a claim is considered to be subject to a bona fide dispute." *Bartmann v. Maverick Tube Corp., Nucorp Supply, Inc.,* 853 F.2d 1540, 1544 (10th Cir.1988). *See also, Rimell,* 946 F.2d, at 1365; *In re Mavellia,* 149 B.R. 301, 305–6 (Bankr.E.D.N.Y.1991); *Garland Coal & Mining,* 67 B.R., at 521. Accordingly, the Court concludes that for purposes of this involuntary petition, the obligation of B & B to Gulf Chrysler is not subject to a bona fide dispute.

 As to the ability of Gulf Chrysler to be a petitioning creditor against B & B, it has been shown, and is undisputed, that Gulf Chrysler was owed a small debt of approximately $2,000.00 by B & B at the time the petition was filed. The obligation was for an automobile purchased some six months earlier and still unpaid. Eight days after the petition was filed, B & B paid the debt by credit card. B & B maintains that receipt of this payment created a voidable transfer pursuant 11 U.S.C. § 549, thus eliminating Gulf Chrysler as a qualified creditor. However, post-petition payment of a *petitioning* creditor does not disqualify it from being such. *Bartmann, supra* (post-petition payment of debt does not alter a creditor's status as a petitioning creditor); *In re All Media Properties, Inc.,* 5 B.R. 126 (Bankr.S.D.Tex.1980), *aff'd, All Media Properties, Inc. v. Best,* 646 F.2d 193 (5th Cir.1981) (satisfaction of a

---

4. Additionally, the Fifth Circuit has held, at a time when this Court belonged to that circuit, that small, recurring debts were also not to be counted in determining if there were twelve creditors. *Denham v. Shellman Grain Elevator, Inc.,* 444 F.2d 1376 (5th Cir.1971). This issue has not been ruled upon by the Eleventh Circuit, and this case continues to be followed by Bank-

ruptcy and District Courts within the Eleventh Circuit. *See, Sipple v. Atwood,* 124 B.R. 402 (S.D.Ga.1991); *In re Smith,* 123 B.R. 423 (Bankr.M.D.Fla.1990), *aff'd, First Florida National Bank v. Smith,* 129 B.R. 262 (M.D.Fla.1991). Had the debtors' creditors not been eliminated from· the count as a result of post-petition payment, this would have been an issue.

claim after filing of involuntary petition does not deprive court of jurisdiction); *In re Carvalho,* 68 B.R. 254 (Bankr.D.Ore.1986) (petitioning creditors paid post-petition continued to be counted for purpose of establishing minimum number of petitioning creditors required to support petition). *See also, In re Braten,* 99 B.R. 579, 582 (Bankr.S.D.N.Y. 1989) *Garland Coal & Mining,* 67 B.R. 514; *Matter of Sjostedt,* 57 B.R. 117, 120 (Bankr. M.D.Fla.1986).

▇▇▇ The remaining argument put forth by both debtors is that because Gulf Chrysler is essentially the only creditor not being paid, the involuntary petitions should fail. It is true that generally, the failure of a debtor to meet the liability of a single creditor does not warrant the granting of an order for relief in an involuntary case. *Smith,* 123 B.R., at 425; *In re 7 H Land and Cattle Company,* 6 B.R. 29 (Bankr.D.Nev.1980). However, there are two exceptions to this rule. One exception, which the Court is not exploring at this time, is where the sole creditor is without adequate remedy under nonbankruptcy law. The other exception is where there exists special circumstances amounting to fraud, artifice or scam by the debtor. *See, Smith,* 123 B.R., at 425; *Matter of LeSher International, Ltd.,* 32 B.R. 1, 2 (Bankr.S.D.N.Y.1982); *7 H Land and Cattle Company,* 6 B.R., at 32–34; *In re Arker,* 6 B.R. 632, 636 (Bankr.E.D.N.Y.1980). After reviewing all the evidence presented and observing the demeanor of the witnesses at both hearings, the Court concludes that such special circumstances exist as to both Crain and B & B. The evidence is unrefuted regarding the fraudulent manner in which Mrs. Crain transferred money from her employer to B & B. The evidence is also unrefuted as to whom the money was transferred to. Crain's argument that the fraud no longer exists because she admitted it and because she cooperated with Gulf Chrysler in determining the extent of the debt is rejected.

Based upon the above findings and conclusions, the involuntary petitions filed by Gulf Chrysler against Mrs. Crain and B & B are due to be granted and relief order in both cases. The debtors shall be given 15 days from the date of this Order to file their respective Schedules and Statements of Affairs.

### *ORDER*

ORDERED that the Involuntary Petition of Gulf Chrysler–Plymouth–Dodge, Inc. for an Order of Relief against Brenda Crain be, and it hereby is, GRANTED; and it is further

ORDERED, that the Involuntary Petition of Gulf Chrysler–Plymouth–Dodge, Dodge, Inc. for an Order of Relief against B & B Vehicle Sales, Inc. a/k/a B & B Motors be, and it hereby is, GRANTED; and it is further

ORDERED, that Brenda Crain and B & B Vehicle Sales, Inc. file with the Court their respective Statements of Affairs and Bankruptcy Schedules within 15 days of the date of this Order.