**In re Louis Paul MASSA, Debtor.**

**Bankruptcy No. 92–21841.**

United States Bankruptcy Court,
W.D. New York.

Feb. 3, 1998.

---

David D. MacKnight, Lacy, Katzen, Ryen & Mittleman, Rochester, NY, for Debtor.

Peter J. Craig, Knauf & Craig, L.L.P., Rochester, NY, for C. Donald & Rebecca Addona.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### ISSUES PRESENTED AND HOLDING

This matter is before the Court to decide: (1) whether bankruptcy courts and state courts have concurrent jurisdiction to determine that an unscheduled debt is nondischargeable pursuant to Section 523(a)(3)(B), even when the creditor whose debt was not scheduled may have had notice or actual knowledge of the filing of the debtor's bankruptcy case; and (2) if, in the exercise of concurrent jurisdiction, a state court may have erroneously determined that an unscheduled debt was nondischargeable pursuant to Section 523(a)(3)(B), whether the bankruptcy court can, directly or indirectly, assume jurisdiction to correct the error, including by purporting to enforce the discharge and injunction provisions of Section 524(a).

This Court holds that: (1) concurrent jurisdiction to determine that an unscheduled debt is nondischargeable pursuant to Section 523(a)(3)(B) exists from the moment a debtor files the schedules required by Section 521 and Rule 1007 and they fail to list a prepetition debt "of a kind specified" in Section 523(a)(2), (4), (6) or (15) with the name of the creditor holding the debt, and continues until either: (a) the schedules are amended so that a timely request for a determination of dischargeability is reasonably possible; or (b) the bankruptcy court or a state court with concurrent jurisdiction makes a determination of dischargeability pursuant to Section 523(a)(3)(B), notwithstanding that the creditor holding the unscheduled debt may have received notice or had actual knowledge of the debtor's bankruptcy case; and (2) once the state court assumes and exercises its concurrent jurisdiction to determine that an unscheduled debt is nondischargeable pursuant to Section 523(a)(3)(B), the "Rooker–Feldman Doctrine" is applicable and the bankruptcy court can no longer assume jurisdiction, pursuant to Section 524(a) or otherwise, to correct any erroneous determination. Any such error must be corrected through

appropriate and available proceedings in the state court system.

## BACKGROUND

On or about March 25, 1991, C. Donald Addona and Rebecca Addona (the "Addonas") commenced a civil action against Louis Massa (the "Debtor"), d/b/a Keseca Development Company, in the Supreme Court of Ontario County (the "State Court Action"), alleging that he had been guilty of fraud and false representations in connection with certain transactions which took place between the parties in 1989 and 1990 (the "Addonas Claim").

On June 19, 1992, after the State Court had denied a motion to withdraw filed by the Debtor's State Court attorneys (the "Debtor's State Court Attorneys"), in part because "withdrawal of counsel for the defendant at this time would allow him (the Debtor) to further delay discovery", the attorney for the Addonas (the "Addonas' State Court Attorney") filed a Note of Issue indicating that the State Court Action was ready for trial.

On July 1, 1992, the Debtor filed a petition initiating a Chapter 13 case.

On July 7, 1992, the Debtor's State Court Attorneys sent a letter to the Supreme Court Justice who was presiding over the State Court Action (the "State Court Justice"), with a copy to the Addonas' State Court Attorney, advising him that they had filed a renewed motion to be allowed to withdraw, combined with a motion to strike the Note of Issue. The letter further stated that, "We have been informed that the Defendant, Louis Massa d/b/a Keseca Development Company, has filed a Chapter 13 Bankruptcy in the Western District of New York. Accordingly, this action is now stayed and we request that the Court hold the motion in abeyance pending the disposition of the bankruptcy filing."

On July 14, 1992, the Debtor's State Court Attorneys sent an additional letter to the Addonas' State Court Attorney, with a copy to the State Court Justice, which referred to the July 7, 1992 letter and the bankruptcy filing, and indicated that, "the motion (to strike the Note of Issue) is being held in abeyance pending Mr. Massa's bankruptcy proceeding. In the event that the Chapter 13 is stricken, and a Chapter 7 is not filed, we will proceed with the motion."

On July 15, 1992, the Debtor filed the schedules and statements required to be filed by Section 521(1) and Rule 1007 of the Rules of Bankruptcy Procedure (the "Schedules"). These Schedules did not list the Addonas as creditors or disclose, as required, the pending State Court Action for fraud and false representations.

The Debtor's bankruptcy case was a lengthy and litigious one.[1] The case, which was originally filed as a Chapter 13 case on July 1, 1992, was converted to a Chapter 11 case on September 14, 1992, converted, by Court Order, to a Chapter 7 case on November 25, 1992, and thereafter administered as an asset case. On March 10, 1993, an Order was entered granting the Debtor a discharge (the "Discharge Order") and on May 28, 1997, the case was finally closed.

On November 24, 1997, the Debtor's case was reopened and the Debtor filed a motion (the "Contempt Motion") which requested that the Court enter an order: (1) enforcing the provisions of Section 524(a) and the Discharge Order; and (2) finding the Addonas, the Addonas' State Court Attorney and their new state court attorney (the "Collection Attorney") in contempt for their respective actions in continuing the State Court Action after the Discharge Order was entered, because the Addonas had notice of the Debtor's bankruptcy case in time to file a complaint to determine dischargeability, and, since they failed to file it, the Addonas Claim had been discharged.

The Contempt Motion alleged that: (1) on June 16, 1994, notwithstanding: (a) the let-

---

1. The Court's docket covering the period between the filing of the original petition and the closing of the case is twenty-one pages long. The docket shows numerous hearings on motions, including motions: (a) for relief from the automatic stay; (b) to convert or dismiss the case; (c) to vacate Court orders; (d) for reconsideration; (e) for sanctions; (f) in connection with several appeals filed by the Debtor; and (g) by the Chapter 7 Trustee to be authorized to commence a proceeding to revoke the Debtor's discharge for his failure to cooperate with the Trustee.

ters which he had written to the State Court Justice and the Addonas' State Court Attorney in July, 1992 (the "Notices"), which gave the Addonas notice of the Debtor's bankruptcy case within the meaning of Section 523(a)(3)(B)[2]; and (b) the entry of the Discharge Order on March 10, 1993, the Debtor's State Court Attorneys once again made a motion (the "Withdrawal Motion") to strike the Note of Issue and to be authorized to withdraw as attorneys for the Debtor in the State Court Action[3]; (2) the Withdrawal Motion was granted;[4] (3) on October 20, 1995, after the Debtor failed to appear for trial and an inquest into damages had been conducted, the State Court Justice, having made detailed written findings of fact and conclusions of law which indicated that the Debtor had committed fraud, signed a judgment in the amount of $342,587.97 in favor of the Addonas against the Debtor (the "State Court Judgment"); (4) at the time the State Court Judgment was signed, the Addonas' State Court Attorneys allegedly had provided the State Court Justice with a copy of a November 18, 1994 letter which he had received nearly a year earlier from the Debtor's bankruptcy attorney (the "November 94 Letter"), which stated, that: "I am not familiar with the case of Addona v. Massa, but you should know that Mr. Massa is in bankruptcy and there is a stay of all proceedings against him, furthermore, he is in a New York State correctional facility, and, therefore, he is unable to attend a trial on November 22, 1994, unless a Court orders the State to produce him."[5]; (5) after the entry of the State Court Judgment, the Addonas' State Court Attorney returned the file to them indicating that he did not collect judgments; (6) thereafter, the Collection Attorney was retained who, it is conceded, had no knowledge when retained of the Debtor's bankruptcy case or of the Notices, since there were no copies of the Notices or the November 94 Letter included in the file turned over to him; (7) by March 17, 1997, the Collection Attorney had executed upon the Debtor's 1993 Cadillac DeVille (the "Cadillac") and the Ontario County Sheriff (the "Sheriff") had scheduled an auction of the Cadillac for March 26, 1997; (8) on March 25, 1997, the Debtor, by a new attorney, filed with the Bankruptcy Court an Amended Voluntary Petition and Amended Schedules, which for the first time disclosed the Addonas Claim and the State Court Action, and also set forth that his Cadillac had

2. Section 523(a)(3) provides:

    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

    (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

    (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

    (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

3. One of the many inexplicable events in this case is why the Debtor's State Court Attorneys, an experienced collection, commercial and bankruptcy firm, after having given the Addonas' State Court Attorney written notice of the filing of the Debtor's bankruptcy case, did not move to have the pending State Court Action dismissed after the Debtor received his discharge without any complaint objecting to the discharge of the Addonas Claim having been filed. The Withdrawal Motion in June, 1994 arguably gave the State Court Justice and the Addonas' State Court Attorney the impression that the pending State Court Action could continue, perhaps because, as indicated in the July 14, 1992 letter, the Chapter 13 had been stricken and no Chapter 7 had been filed.

4. The Order granting the Withdrawal Motion provided that a copy of the Order be served on the Debtor by mail and it stayed the State Court Action for a period of thirty days from the date of the service of the Order to afford the Debtor an opportunity to secure other counsel to represent him in the Action.

5. By the time the Debtor's bankruptcy attorney wrote the November 94 Letter, the Discharge Order had been entered and, since no determination had been made by the Bankruptcy Court or any state court with concurrent jurisdiction that the unscheduled Addonas Claim had been discharged, the automatic stay provided by Section 362(a) had terminated pursuant to Section 362(c)(2)(C). In addition, the Letter may have been taken to confirm that the Addonas Claim was not scheduled.

been seized [6]; (9) on or about May 20, 1997, after the Sheriff canceled the auction because the Debtor had filed the Amended Petition and Schedules, the State Court Justice signed an Order requiring that the Debtor show cause (the "Order to Show Cause") why he should not be held in contempt for interfering with the auction and why the Cadillac should not now be sold; (10) in the Collection Attorney's affidavit in support of the Order to Show Cause, now that he had become aware of the Debtor's bankruptcy case because of the filing of the Amended Petition and Schedules, he alleged that:

    (a) upon information and belief, after the filing of his petition, the Debtor had been prosecuted and convicted of insurance fraud and attempted grand larceny, and was presently on parole;

    (b) the Debtor had filed a bankruptcy case on July 1, 1992, and received a discharge on March 10, 1993;

    (c) at no time were the Addonas listed as creditors in the Debtor's bankruptcy proceeding;

    (d) because of the failure to list the Addonas as creditors, they had no opportunity to file a complaint objecting to the discharge of the Addonas Claim, and, therefore, pursuant to Section 523(a)(3)(B), the Addonas Claim, which was incurred by fraud, was not discharged; and

    (e) the filing of the Amended Petition and Schedules had no legal effect and was merely an attempt by the Debtor to delay and impede the enforcement of the State Court Judgment without legal justification;

(11) on June 24, 1997, the State Court Justice issued a Decision & Order which determined that:

    (a) the Debtor's Schedules did not list the Addonas as creditors; and

    (b) the Addonas Claim, now evidenced by the State Court Judgment, was not discharged, because:

    (i) it was nondischargeable pursuant to Section 523(a)(3)(B), since the obligation was not listed in time to permit the Addonas to make a timely request for a determination of dischargeability;

    (ii) it was a nondischargeable obligation pursuant to Section 523(a)(2), since it was incurred by false representations and fraud, and the Court's prior determination of this at the time the State Court Judgment was signed was res judicata on the issue of fraud;

    (iii) the entry of the State Court Judgment did not violate the automatic stay provided by Section 362(a), since, pursuant to Section 362(c)(2)(C), the automatic stay had terminated when the Discharge Order was entered;

    (iv) the Cadillac was not property of the bankruptcy estate, since, by the Debtor's own admission, it was acquired subsequent to the filing of his petition; and

    (v) in accordance with *In re Hicks*, 184 B.R. 954 (Bankr.C.D.Cal.1995) and *In re Franklin*, 179 B.R. 913 (Bankr. E.D.Cal.1995), since the Debtor had failed to schedule the Addonas Claim, the State Court had concurrent jurisdiction to determine whether the Addonas Claim was nondischargeable pursuant to Section 523(a)(3)(B);

(12) on July 25, 1997, the Debtor appealed the Decision & Order (the "Appeal"); (13) the Cadillac had been sold by the Sheriff at auction; (14) on or about October 17, 1997, new counsel for the Debtor obtained copies of the Notices, which established that the Addonas had received notice of the Debtor's bankruptcy case within a month of its filing, showed them to the Collection Attorney and attempted to obtain from the Addonas and the Collection Attorney a voluntary termination of all enforcement proceedings, the return of the Cadillac and an acknowledgment that the Addonas Claim had been discharged; and (15) when the Addonas would

---

**6.** The Cadillac, which had been acquired by the Debtor post-petition, was never property of the bankruptcy estate.

not agree, the Debtor, by new bankruptcy counsel, filed the Contempt Motion.[7]

The Addonas, by their Collection Attorney, interposed opposition to the Contempt Motion, which alleged that: (1) on equitable grounds, the Bankruptcy Court should adopt the determination by the State Court Justice, as set forth in the Decision & Order, that the Addonas Claim was not discharged by the Debtor's bankruptcy; (2) in the alternative, the Court should exercise its Section 105 powers to permit the Addonas to now file a complaint pursuant to Section 523(a)(2) to have the Bankruptcy Court determine that the Addonas Claim was nondischargeable; (3) the Debtor's failure to list the Addonas Claim was not inadvertent or an oversight, but was a conscious decision to keep his creditors from knowing that he had what he believed was a $94,000.00 claim against the Addonas; (4) on November 3, 1997, the Appeal was dismissed by the Appellate Court because the Debtor had failed to perfect and prosecute the Appeal, which made the Decision & Order and the State Court Judgment res judicata on the issue of nondischargeability; (5) prior to October 17, 1997, the Addonas themselves had no knowledge of either the Notices or the Debtor's bankruptcy case; and (6) the Cadillac was purchased at auction by a bona fide third party purchaser, so that should the Court find that the Addonas Claim was discharged by the Debtor's bankruptcy case, and the State Court Judgment and related enforcement proceedings were void, the Court should award money damages to the Debtor rather than a return of the vehicle.

The Debtor has argued[8], that: (1) the United States Court of Appeals for the Second Circuit in *In re Medaglia*, 52 F.3d 451 (2d Cir.1995), followed by the Bankruptcy Court in *In re Fishgold*, 206 B.R. 50 (Bankr. W.D.N.Y.1997), has held that when an unscheduled creditor has actual knowledge of a bankruptcy case in time to file a complaint to have a debt determined to be nondischargeable by the bankruptcy court pursuant to Sections 523(a)(2), (4) or (6), that creditor is barred from ever bringing such a complaint, even though the creditor was not scheduled and did not receive any notices in the bankruptcy case, including a bar date notice for the filing of a complaint; (2) because the Notices gave the Addonas actual notice of the Debtor's bankruptcy case in time for them to file a timely complaint pursuant to Section 523(a)(2), and they failed to do so, the Addonas Claim was discharged by the Discharge Order; (3) because the Addonas Claim was so discharged, continuing the State Court Action after the Discharge Order was entered violated both the Discharge Order and Section 524(a)[9]; (4) allowing the State Court Action to proceed to judgment by failing to remind the State Court Justice of the Notices was wilful contempt by the Addonas and their State Court Attorney; (5) the actions of the Addonas' State Court Attorney, which must be imputed to the Addonas, including withdrawing at the enforcement stage, "creates an inference of guilty knowledge"; (6) the bankruptcy courts have exclusive jurisdiction to determine the dischargeability of obligations pursuant to Section 523(a)(2), see *In re Beardslee*, 209 B.R. 1004 (Bankr.D.Kan.1997), and there is no concurrent jurisdiction in the State Courts to make such a determination; (7) the actions of the Addonas Collection Attorney in moving to

---

7. The Debtor's new bankruptcy counsel must have had what he believed was a good reason why, when he discovered the Notices, he did not remind the State Court Justice of their existence and make them known to the appellate court handling the appeal. This seemingly would have afforded the State Court system an opportunity to take appropriate action to correct any error.

8. The Debtor submitted a Memorandum of Law, a Reply Memorandum of Law, a Supplemental Memorandum of Law, and a Second Supplemental Memorandum of Law.

9. Section 524(a) provides in part, that:

(a) A discharge in a case under this title—
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

dismiss the Appeal after October 17, 1997, when he had become aware of the Notices, was such a wilful violation of the Discharge Order and Section 524(a) that punitive damages should be imposed; (8) the Debtor had no obligation to raise his bankruptcy discharge of the Addonas Claim as an affirmative defense in the State Court Action, so that the Debtor did not waive the right to have the Bankruptcy Court, rather than the State Court, determine whether the Addonas Claim was nondischargeable pursuant to Section 523(a)(2); and (9) even if state courts have concurrent jurisdiction to make determinations under Section 523(a)(3)(B), they can never make the required underlying determination that a debt is nondischargeable under Section 523(a)(2), which is what the State Court did in its Decision & Order, since such a determination is within the exclusive jurisdiction of the bankruptcy courts.

The Addonas, their State Court Attorney and their Collection Attorney have argued that: (1) for purposes of Section 523(a)(3)(B), notice of the filing of a Chapter 13 case, in which Section 523(a)(2) claims are dischargeable, is not sufficient notice of the case when it subsequently converts to Chapter 11 or Chapter 7 in which Section 523(a)(2) claims can be discharged unless a creditor files the required complaint; (2) notwithstanding the decision of the United States Court of Appeals for the Second Circuit in *In re Medaglia* and the Notices received by the Addonas' State Court Attorney, the Addonas did not have notice or actual knowledge of the Debtor's Chapter 13, Chapter 11 or Chapter 7 cases within the meaning and intent of Section 523(a)(3)(B), so that the Addonas Claim was not discharged by the Debtor's bankruptcy case; (3) the Debtor's actions and omissions in his bankruptcy case and in the State Court Action were so egregious that it would be inequitable for the Bankruptcy Court to determine that the actions of the Addonas, their State Court Attorney and their Collection Attorney were wilful violations of the Discharge Order or Section 524(a); (4) the State Court had concurrent jurisdiction to make a determination of the nondischargeability of the Addonas Claim

pursuant to Section 523(a)(3)(B); (5) once the State Court exercised its concurrent jurisdiction pursuant to Section 523(a)(3)(B), when it entered the State Court Judgment and when it issued the Decision & Order, the Rooker–Feldman Doctrine became applicable, which prevents the Bankruptcy Court from exercising jurisdiction to correct any error that may have been made by the State Court, *see In re Beardslee,* 209 B.R. 1004.

## DISCUSSION

### I. *SECTION 521 AND RULE 1007*

Section 521(1), which sets forth a debtor's duties, provides that, "The Debtor shall —

(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs."

In furtherance of the provisions of Section 521, Rule 1007 of the Rules of Bankruptcy Procedure provides, in part, that

(a) List of Creditors and Equity Security Holders.

(1) Voluntary Case. In a voluntary case, the debtor shall file with the petition a list containing the name and address of each creditor unless the petition is accompanied by a schedule of liabilities.

(b) Schedules and Statements Required.

(1) Except in a chapter 9 municipality case, the debtor, unless the court orders otherwise, shall file with the court schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases, and a statement of financial affairs, prepared as prescribed by the appropriate Official Forms.

If the Debtor had properly performed his duties under Section 521(1) and Rules 1007(a) and (b)(1), he would have listed the Addonas as creditors and fully disclosed the pending State Court Action, and all of the time and resources expended in this matter could have been avoided.[10]

10. In the Background to this Decision & Order, I

have set forth in detail the chronology of this

As this Court has often stated, the benefits received by an honest debtor in a bankruptcy case, including a discharge of all dischargeable debts, a "fresh start", are extraordinarily disproportionate to the few demands and expectations placed upon a debtor by the Bankruptcy Code and Rules. One of these few, but very important duties, which is seemingly easy for a consumer or typical individual debtor to perform, is to ensure that all creditors and any pending court actions he is aware of are properly scheduled.[11]

As this Court has clearly stated on numerous occasions to debtors and their attorneys, notwithstanding all of the financial and perhaps personal difficulties that a debtor may be experiencing, my expectation is that when debtors and their attorneys are finalizing and signing their schedules, they will devote their full attention to them to ensure that they are complete and accurate to the best of the debtors' knowledge and information. If the Debtor in this case had given his Schedules even a cursory review when he signed them, he would have realized that the Addonas Claim and the pending State Court Action were not disclosed. They were too significant to have been overlooked.

## II. *SECTION 523(a)(2), (4), (6) and (15)*

The parties agree and the law is clear that bankruptcy courts have exclusive jurisdiction to make a determination that a debt is nondischargeable pursuant to Section 523(a)(2), (4), (6) or (15). *See* Section 523(c) and *In re Medaglia*, 52 F.3d 451 (2d Cir.1995).

■Therefore, to the extent that the State Court Judgment or the Decision & Order was a determination that the Addonas Claim was nondischargeable specifically pursuant to Section 523(a)(2), that determination was erroneous, since it was made by the

State Court without jurisdiction. This Court can only assume that if the Debtor had perfected and prosecuted the Appeal, the appellate court would have corrected that error.

■ However, to the extent that the determination of the State Court Justice that the Addonas Claim was nondischargeable pursuant to Section 523(a)(2) was in fact nothing more than a statement that he had determined that it was a debt "of a kind specified in" Section 523(a)(2), since it was incurred by fraud, essentially a state law cause of action determined by the state courts every day, made as a necessary incident of his determination under Section 523(a)(3)(B), it was not made without jurisdiction. *See In re Franklin*, 179 B.R. 913, 924 (Bankr.E.D.Cal.1995).

## III. *SECTION 523(a)(3)(B)*

■ As discussed above, if a debt, such as the Addonas Claim, alleged to have been incurred by fraud (a "Fraud Debt") is properly scheduled, it can be determined to be nondischargeable pursuant to Section 523(a)(2) only by the bankruptcy court. However, once a debtor fails to schedule a creditor, and that creditor holds a debt "of a kind specified in" Section 523(a)(2), (4), (6) or (15), it becomes possible for that debt to be determined to be nondischargeable, not only pursuant to the above subsections, but pursuant to Section 523(a)(3)(B). Furthermore, when such a Fraud Debt is not scheduled, not only can a determination of nondischargeability flowing from Section 523(a)(3)(B) be made by the bankruptcy court, it can also be made by an appropriate state court which has concurrent jurisdiction to make such a Section 523(a)(3)(B) determination.[12]

matter, without many of the additional accusations, innuendos and inferences advanced by the parties, not so much for its legal significance or importance to the Court's Decision, but to demonstrate what can happen when the necessary care is not taken to ensure that a debtor's schedules are complete.

11. I continue to be amazed at how often individual debtors fail to properly schedule significant creditors, and then provide the Court with what they believe to be a valid excuse, such as, "I

guess I just didn't read over my schedules very carefully before I signed them. I assumed that my attorney had included all the information I gave him."

12. *See In re Franklin*, 179 B.R. 913 (Bankr. E.D.Cal.1995) in which Bankruptcy Judge Christopher Klein has set forth an excellent in-depth and scholarly analysis of the law, including why there is concurrent jurisdiction under Section 523(a)(3)(B).

It is the mere failure to schedule the Fraud Debt which in this Court's opinion puts concurrent jurisdiction into play. This is the case notwithstanding that there may have been notice or actual knowledge of the Debtor's bankruptcy case within the meaning of Section 523(a)(3)(B). A debtor who fails to list a creditor who holds a debt of a kind specified in Section 523(a)(3)(B) loses the jurisdictional protections of Section 523(c). *See In re Hicks,* 184 B.R. 954 (Bankr.C.D.Cal. 1995); *In re Santiago,* 175 B.R. 48 (9th Cir. BAP 1994); and *American Standard (Ins. Co.) v. Bakehorn,* 147 B.R. 480 (N.D.Ind. 1992).[13]

Notice or actual knowledge of the Debtor's bankruptcy case does not, in my view, eliminate concurrent jurisdiction, which exists when a bankruptcy case is filed and the debt is not scheduled, and continues until a determination is made by the first court which assumes the concurrent jurisdiction and makes a Section 523(a)(3)(B) determination. Such notice or actual knowledge goes only to the underlying merits and whether a creditor can ultimately succeed under Section 523(a)(3)(B) in having such a Fraud Debt correctly determined to be nondischargeable. It does not go to jurisdiction. To make jurisdiction dependent on there in fact having been no notice or actual knowledge would require those issues of fact to be decided before it could be determined who had jurisdiction to decide them.[14]

In this case, the Debtor failed to schedule the Addonas Claim at the time his Schedules were filed, and prior to: (1) September 28, 1992 when, after the conversion of the case from Chapter 13 to Chapter 11, a notice was sent to all scheduled creditors informing them of a December 21, 1992 bar date for the filing of complaints to have a debt determined to be nondischargeable; and (2) December 18, 1992 when, after the conversion of the case from Chapter 11 to Chapter 7, an additional notice was sent to all scheduled creditors informing them of a March 9, 1993 bar date for the filing of complaints for a determination of nondischargeability.[15] Those failures put both Section 523(a)(3)(B) and concurrent jurisdiction into play.[16]

## IV. SECTION 524(a) and THE DISCHARGE ORDER

Section 524(a)(1) and (2) and the Discharge Order void any judgment in connection with any debt discharged under Section 727, and further operate as an injunction against the collection of any such debt. Section 727(b) provides that:

> (b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any

---

**13.** To the extent that the decision by Bankruptcy Judge Klein in *In re Franklin* can be read as holding that concurrent jurisdiction under Section 523(a)(3)(B) exists only if a debt of a kind specified in that subsection is not listed and the creditor does not have notice or actual knowledge, I believe that is too narrow a reading of the decision or, if it is a correct reading, I respectfully disagree.

**14.** If Congress wanted only bankruptcy courts to determine whether a creditor had notice or actual knowledge of a bankruptcy case within the meaning of Section 523(a)(3)(A) and (B), it could have provided for such exclusive jurisdiction in Section 523(c).

**15.** On December 18, 1992, the Debtor filed a Final Report and Account required in connection with the conversion of his case from Chapter 11

to Chapter 7. The Final Report and Account once again failed to list the Addonas as creditors or set forth any information regarding the pending State Court Action.

**16.** Many courts have concluded that the debtor's "penalty" for omitting creditors is a loss of exclusive federal jurisdiction to determine whether the omitted debt has been discharged. *See In re Hicks,* 184 B.R. at 962. I prefer to think of concurrent jurisdiction not as a penalty, but as an appropriate consequence for a debtor's failure to perform the duties required by Section 521(1) and Rule 1007, especially since the issues under Section 523(a)(3)(B) most often initially present themselves in a state court proceeding.

such debt or liability is allowed under section 502 of this title.

■ Because Section 523(a)(3)(B) was in play and no determination had yet been made by the Bankruptcy Court or a state court with concurrent jurisdiction that the unscheduled Addonas Claim was discharged pursuant to Section 523(a)(3)(B), even though the Addonas' State Court Attorney had received the Notices, and, therefore, the Addonas may have had notice or actual knowledge of the Debtor's bankruptcy case imputed to them, the Addonas Claim was not discharged at the time the State Court Justice assumed concurrent jurisdiction and entered the State Court Judgment. Therefore, and until such a determination was made, further proceedings to collect the Addonas Claim and have the issue of dischargeability determined pursuant to Section 523(a)(3)(B) were not in violation of Section 524(a) or the Discharge Order.

Once the State Court Judgment was signed [17] and the Decision & Order filed, which found the Addonas Claim not to have been discharged pursuant to Section 523(a)(3)(B), the actions taken to enforce the Judgment, entered in the proper exercise of concurrent jurisdiction, did not violate the Discharge Order or Section 524(a). Furthermore, pursuant to Section 362(a)(2)(C), the automatic stay was no longer in effect when the Judgment was signed and the Decision & Order filed.[18]

## V. *THE ROOKER–FELDMAN DOCTRINE*

■ As discussed in detail in *In re Beardslee,* 209 B.R. 1004 (Bankr.D.Kan. 1997), under the Rooker–Feldman Doctrine, when a state court has jurisdiction to decide a federal question, a federal court, including a bankruptcy court, has no subject matter jurisdiction to review the state court's determination on that federal question. Since the State Court had concurrent jurisdiction to make the Section 523(a)(3)(B) determination that the Addonas Claim was not discharged, and it made that determination in the exercise of its concurrent jurisdiction, both at the time it signed the State Court Judgment and issued the Decision & Order, under the Rooker–Feldman Doctrine this Bankruptcy Court cannot act as an appellate court to review that determination and correct it. This is true even if it were clear that it was an erroneous determination. If the State Court's Section 523(a)(3)(B) determination was erroneous, it is presumed that it would be corrected in the state court system through the appellate process, or otherwise. If an error were not corrected in the state court system, it would be unfortunate. However, at times, judicial error goes uncorrected.

## CONCLUSION

The Debtor's motion, pursuant to the Discharge Order and Section 524(a), to hold the Addonas, the Addonas State Court Attorney and the Collection Attorney in contempt and to enjoin any further proceedings in connection with the State Court Judgment, is in all respects denied.

**IT IS SO ORDERED.**

---

**17.** If the State Court Justice was aware of the November 94 Letter and the Notices when he signed the State Court Judgment, even though the findings of fact and conclusions of law did not detail that determination, he impliedly determined that the Addonas Claim was nondischargeable pursuant to Section 523(a)(3)(B).

**18.** Once a discharge is granted, there is no need for the automatic stay since the Discharge Order and Section 524(a) will enjoin any action on discharged debts and nondischargeable debts to the extent that they would affect property of the estate. As to actions on nondischargeable debts which do not affect property of the estate, there would be no need to enjoin such actions.