863 A.2d 1100 (2005)
374 N.J. Super. 184
Katherine HESELTON, Plaintiff-Respondent,
v.
Robert MAFFEI, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 2004.
Decided January 11, 2005.
*1101 Ivette R. Alvarez, Livingston, argued the cause for appellant (Einhorn, Harris, Ascher, Barbarito, Frost & Ironson, attorneys; Bonnie C. Frost, on the brief).
Dennis M. DeSantis, Trenton, argued the cause for respondent (Destribats, Campbell, DeSantis & Magee, attorneys; Mr. DeSantis, on the brief).
Before Judges SKILLMAN, COLLESTER and PARRILLO.[1]
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
In this appeal from a post-judgment matrimonial order, the primary issue is whether defendant's obligation to indemnify *1102 plaintiff for any liability she might incur under a mortgage on the former marital home was discharged by his bankruptcy even though he only listed plaintiff as a codebtor, and not as a creditor, in his bankruptcy petition. We conclude that defendant's bankruptcy petition did not give plaintiff reasonable notice that his indemnification obligation could be discharged in the bankruptcy proceeding. Therefore, she may enforce that obligation notwithstanding defendant's bankruptcy.
The parties were married on February 17, 1989 and divorced on April 12, 1995. Three children were born of the marriage, who are currently 15, 14 and 12.
The judgment of divorce incorporated a property settlement agreement. This agreement provided that the children would continue to reside in the marital home with defendant, and that he would provide for their support. It also provided that plaintiff's mother would continue to reside in the marital home and that defendant would provide her with "room, board and meals" in exchange for child care services. The agreement further provided that plaintiff would have no obligation for child support as long as her mother continued to provide those services and that neither party would have any obligation for the payment of alimony.
Regarding the marital home, the agreement stated:
Recognizing the current real estate market conditions, the existence of a first mortgage in the amount of approximately One Hundred Twenty Two Thousand ($122,000.00) Dollars, the Husband and Wife acknowledge there would be little net equity after closing costs should the marital premises at 2357 Holly Hill Road, Manchester, New Jersey be sold at this time. The Wife desires to be free from the obligation for the repayment of the outstanding loans secured by the marital residence. Toward that end, the Husband and Wife hereby agree that the Wife shall execute a Quit Claim Deed transferring all of her right, title and interest in and to the aforesaid marital premises to the Husband. The Husband agrees to save and hold harmless and otherwise indemnify the Wife against any and all claims arising out of the loans against the marital premises as referenced herein above.
In 1998, plaintiff moved to Maine with the children. Subsequent to this move, the holder of the mortgage on the marital home, Citicorp Mortgage, Inc. (Citicorp), brought a foreclosure action that resulted both in foreclosure of the home and the entry of a deficiency judgment against defendant.
In 2000, defendant filed a petition for bankruptcy in the United States Bankruptcy Court. The primary creditor listed in defendant's petition was Citicorp. The petition did not identify plaintiff as a creditor, but it did identify her as a codebtor on the obligation to Citicorp. The bankruptcy proceeding resulted in a judgment, entered on July 18, 2000, which discharged defendant from his debts.
After defendant's discharge in bankruptcy, Citicorp pursued an action against plaintiff for the balance due on the deficiency judgment, which resulted in the entry of a judgment against her for $27,118.22 plus interest thereon.
In late 2001, plaintiff filed a motion to impose a child support obligation upon defendant. As a result, an order was entered on December 7, 2001, which required defendant to pay $45 per week in child support, effective April 10, 2001, plus $10 per week in arrearages. The order also obligated defendant to pay $2400 for private school tuition for the parties' two older children. The order noted that in establishing defendant's child support obligation: "Allowance has been made for extraordinary *1103 visitation expenses (based on average expense of $500/month)."
In June 2003, plaintiff filed a motion seeking, among other things, a judgment against defendant for the amount of the judgment Citicorp had obtained against her. In support of this claim, plaintiff relied upon the part of the parties' property settlement agreement that obligated defendant "to save and hold [plaintiff] harmless and otherwise indemnify [plaintiff] against any and all claims arising out of the loans against the marital premises." Defendant opposed this part of plaintiff's motion on the ground that plaintiff's claim had been discharged by the judgment of the bankruptcy court. Plaintiff's motion also sought an increase in defendant's child support obligation and an order requiring him to obtain life insurance to secure that obligation.
After hearing argument, the trial court issued an oral opinion which concluded that defendant's obligation to indemnify plaintiff for any claim arising out of the mortgage on the marital home was "in the nature of alimony" and therefore, under 11 U.S.C.A. § 523(a)(5), non-dischargeable in bankruptcy. Accordingly, the court entered judgment against defendant for $27,118.22 plus interest to reimburse plaintiff for the judgment Citicorp had obtained against her. The judgment requires defendant to pay plaintiff $750 per month to discharge this obligation. The court also increased defendant's child support obligation to $243 per week and ordered him to obtain $100,000 of life insurance to secure that obligation. In calculating defendant's child support obligation, the court did not make any allowance for extraordinary visitation expenses.
On appeal, defendant argues that the trial court erred in requiring him to indemnify plaintiff for the Citicorp judgment because that obligation was discharged by the judgment of the bankruptcy court. Defendant also argues that the court erred in increasing his child support obligation to $243 and ordering him to obtain $100,000 of life insurance to secure that obligation.
We conclude that the trial court properly required defendant to indemnify plaintiff for the amount of the Citicorp judgment because he failed to list her as a creditor in his bankruptcy petition. However, we reverse the part of the order on appeal that increased defendant's child support obligation to $243 per week because the court did not give any recognition to the extra expenses defendant must incur to exercise his parenting time rights in Maine. We affirm the part of the order that requires defendant to obtain $100,000 of life insurance to secure his child support obligation.

I
When a bankruptcy petitioner seeks to discharge an obligation to a former spouse, there are two operative sections of the Bankruptcy Code, 11 U.S.C.A. §§ 523(a)(5) and (15). These sections provide in pertinent part:
A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt 
....
(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, ... or property settlement agreement ...
....
(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation *1104 agreement, divorce decree or other order of a court of record ... unless 
(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]
State and federal courts have concurrent jurisdiction to determine whether a bankruptcy petitioner's debt is "in the nature of alimony, maintenance, or support" and therefore non-dischargeable under 11 U.S.C.A. § 523(a)(5). Winegarden v. Winegarden, 316 N.J.Super. 52, 59, 719 A.2d 678 (App.Div.1998). However, the federal bankruptcy courts have exclusive jurisdiction to determine whether any other kind of marital debt satisfies either of the conditions of dischargeability set forth in 11 U.S.C.A. § 523(a)(15)(A) or (B). Id. at 60, 719 A.2d 678.
A debt to a former spouse, like any other kind of debt, must be listed in the schedule of creditors' claims in the bankruptcy petition. 11 U.S.C.A. § 521(1). If the petition fails to list that debt, it may be excepted from the debts discharged by the judgment of bankruptcy pursuant to 11 U.S.C.A. § 523(a)(3). See Justice v. Justice, 123 N.C.App. 733, 475 S.E.2d 225, 230 (1996), aff'd, 346 N.C. 176, 484 S.E.2d 551 (1997). This section provides that a debt is not discharged by bankruptcy if it is
neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit 
(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.][2]
Thus, to discharge a debt that was neither listed nor scheduled in the bankruptcy petition, the debtor must show that the creditor had "notice or actual knowledge of the *1105 case in time" to file a timely proof of claim. 11 U.S.C.A. § 523(a)(3).
State and federal courts have concurrent jurisdiction to determine whether a debt survived bankruptcy because of the debtor's failure to schedule or list the debt in the petition and the creditor's failure to obtain timely notice of the proceedings by other means. In re McGregor, 233 B.R. 406, 408 (Bankr.S.D.Ohio 1999); In re Massa, 217 B.R. 412, 419-20 (Bankr.W.D.N.Y.), aff'd on other grounds, 187 F.3d 292 (2nd Cir.1999); In re Franklin, 179 B.R. 913, 919-24 (Bankr.E.D.Cal.1995). "The burden of establishing that a creditor has received adequate notice rests with the debtor." Massa, supra, 187 F.3d at 296.
Defendant admits that he failed to schedule his indemnification obligation to plaintiff as a debt in his bankruptcy petition and that he did not list plaintiff as one of his creditors. However, defendant contends that plaintiff had "notice or actual knowledge" of the bankruptcy proceeding because she was served with the petition, which listed her as a codebtor on his obligation to Citicorp.
The Bankruptcy Code's requirement that a creditor receive notice of a bankruptcy petition that may result in discharge of the creditor's claim "embodies a basic principle of justice  that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights." City of New York v. New York, New Haven & Hartford R.R. Co., 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333, 337 (1953). "`Reasonable notice' is defined ... as `notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In re Hairopoulos, 118 F.3d 1240, 1244-45 (8th Cir.1997) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950)). In determining whether a creditor has been afforded an adequate opportunity to present objections, a court should "look `to the totality of the circumstances [.]'" Massa, supra, 187 F.3d at 297 (quoting Dinova v. Harris, 212 B.R. 437, 443 (B.A.P. 2nd Cir.1997)).
Although plaintiff received a copy of defendant's bankruptcy petition, the petition did not list defendant's indemnification obligation to plaintiff as a debt he was seeking to discharge or identify plaintiff as one of his creditors. The petition only listed plaintiff as a codebtor on defendant's obligation to Citicorp.[3] Thus, the petition did not afford plaintiff reasonable notice that defendant's indemnification obligation could be discharged in his bankruptcy proceeding.
At the time of defendant's bankruptcy petition, plaintiff's relationship to defendant was significantly different from that of a commercial enterprise whose sole connection with a debtor is a creditor-debtor relationship. By virtue of the parties' property settlement agreement, defendant assumed a variety of obligations to plaintiff, including, most significantly, the obligation to support the parties' children, which was not dischargeable in bankruptcy, 11 U.S.C.A. § 523(a)(5). Defendant's identification of plaintiff as a "codebtor" on *1106 his obligation to Citicorp did not give her reasonable notice that defendant did not consider his indemnification obligation for that debt to be a component of his child support obligation or in lieu of alimony and thus non-dischargeable under 11 U.S.C.A. § 523(a)(5) but instead some other kind of debt that was subject to discharge under 11 U.S.C.A. § 523(a)(15). Moreover, defendant's failure to give plaintiff adequate notice that he considered his indemnification obligation subject to discharge deprived her of the opportunity to present evidence and legal argument to the bankruptcy court relevant to whether this obligation satisfied one of the two alternative conditions of dischargeability set forth in 11 U.S.C.A. § 523(a)(15). Therefore, unlike an ordinary commercial creditor who ordinarily would know upon receiving notice that one of its debtors has filed a bankruptcy petition that it has to file objections or a claim to prevent discharge, plaintiff's receipt of defendant's petition listing her as a codebtor did not give her reasonable notice that she had to file an objection to preserve her claim against him.
This conclusion is directly supported by Hoffman v. Hoffman, 157 B.R. 580 (E.D.N.C.1992), aff'd o.b., 998 F.2d 1009 (4th Cir.1993), which involved facts quite similar to this case. There, the husband in a pending matrimonial action filed a bankruptcy petition that omitted his wife from the schedule of creditors but included her name and address on the "mailing matrix." Id. at 582. As a result, the wife received a copy of the notice of filing of the petition, the date of the meeting of creditors and the order setting a bar date for submission of claims. Ibid. Despite receiving these documents, the wife did not file any objection to defendant's discharge in the bankruptcy proceeding. Ibid. The husband subsequently claimed that his wife's claims for equitable distribution in the matrimonial action had been discharged by the final judgment in the bankruptcy proceeding. Id. at 583. It was undisputed that the wife's right to equitable distribution was a general unsecured claim that was subject to discharge in bankruptcy. Ibid. Thus, the only issue was whether the notice of the bankruptcy proceeding received by the wife constituted "notice or actual knowledge" of the proceeding in time to file a timely notice of claim within the intent of 11 U.S.C.A. § 523(a)(3). Ibid. In concluding that the wife's marital claims were not barred by her husband's bankruptcy even though she had actual notice of the proceeding, the court stated:
Although [the wife] had actual notice of the bankruptcy proceeding, she had no notice that her marital claims against the Debtor were at issue....
Local Rule 3003.1 of the Bankruptcy court requires that the debtor shall notify each creditor whose claim is listed as contingent, disputed or unliquidated of that fact within fifteen days after filing the schedules. The marital claims of [the wife] were disputed by the Debtor and remain so at this time. The Bankruptcy court ... correctly held that the Debtor cannot, without notifying [the wife] that her rights are being contested, maintain that the controversy has been settled by the discharge in the Chapter 11 proceeding.
... A discharge of a creditor's claim in a Chapter 11 bankruptcy without reasonable notice and an opportunity to be heard violates the creditor's Fifth Amendment due process rights. Further, a creditor who has general knowledge of a debtor's reorganization proceeding has no duty to inquire about further court action.... [T]he Bankruptcy court correctly determined that [the wife] was not aware that her marital rights were being extinguished and, therefore, was not bound by the confirmed Chapter 11 plan.

*1107 [157 B.R. at 584 (internal citations omitted).]
Accord In re Abma, 215 B.R. 148, 152 (Bankr.N.D.Ill.1997) (holding that husband's claim for equitable distribution of marital property was not discharged because he was not on notice that his marital property rights might be extinguished in bankruptcy when he was listed as an unsecured creditor for an undisclosed amount of loans but his claim for equitable distribution was not listed).
We reach the same conclusion in this case as in Hoffman. Although plaintiff received a copy of defendant's bankruptcy petition, the petition did not provide her with notice that defendant was seeking to discharge his obligation to indemnify her for any liability she might incur under the Citicorp mortgage. As a result, she was deprived of a realistic opportunity to object to that discharge. Therefore, we affirm the part of the October 6, 2003 order that enters judgment against defendant, in accordance with his indemnification obligation, for the amount of the judgment Citicorp obtained against plaintiff.

II
Defendant challenges his $243 per week child support obligation to plaintiff on two grounds. First, he argues that because the trial court characterized his obligation to pay plaintiff $750 per month as reimbursement for the Citicorp judgment as "in the nature of alimony," the court erred in failing to treat this obligation as "alimony" in calculating his child support obligation. The rationale for taking alimony into account in calculating child support is described in the Child Support Guidelines:
When applying the guidelines, the amount of alimony, maintenance or spousal support shall be deducted from the paying parent's income (after adjusting for tax benefits, if known) and added to the recipient's income to determine each parent's gross income. This transfer method reflects the availability of income to each parent for the purpose of paying child support.

[Child Support Guidelines, Pressler, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at 2526 (2005) (emphasis added).]
The $750 per month that defendant is required to pay plaintiff as reimbursement for the Citicorp judgment is not available to her to support the parties' children because she is obligated to pay that money to Citicorp. Therefore, whether this obligation is considered a component of the equitable distribution of marital assets and debts or in the nature of support arrearages that accumulated from 1993 to 1998 due to defendant's failure to make the mortgage payments required to maintain the marital home, the reimbursement payments to plaintiff are not current alimony that must be taken into account in determining the allocation of responsibility between the parties for support of their children.
Defendant's second challenge to his $243 per week child support obligation is that the $7 per week allowance for parenting time expenses used to calculate this obligation was inadequate. Under the Child Support Guidelines, when a non-custodial supporting parent's visitation time with a child is less than two nights per week, that parent's support may be adjusted to accommodate variable expenses incurred while he or she has the children. Id. at 2517. This adjustment is designed to account for the increase in costs to the non-custodial parent and decrease in costs to the custodial parent when the non-custodial parent incurs food and transportation costs for the child during visitation. Ibid. Under the Guidelines, it is assumed that variable expenses constitute 37% of *1108 total child-care related expenditures. Ibid. The formula for determining this adjustment of a non-custodial parent's child support obligation is: Basic Child Support Amount ×.37 × Non-custodial Parent's Overnights/Total Overnights With Either Parent. Child Support Guidelines, supra, Appendix IX-B to R. 5:6A at 2546-47.
However, if a custodial parent moves out-of-state, the non-custodial parent may be entitled not only to the parenting time variable expenses calculated under this formula but also an additional allowance for extra expenses the parent must incur to exercise parenting time rights at the out-of-state location. See Horswell v. Horswell, 297 N.J.Super. 94, 103, 687 A.2d 797 (App.Div.1997); Murnane v. Murnane, 229 N.J.Super. 520, 524-25, 552 A.2d 194 (App.Div.1989). Alternatively, the custodial parent may be required to make direct payments for travel expenses the non-custodial parent incurs to exercise out-of-state parenting time. See Chen v. Heller, 334 N.J.Super. 361, 383-84, 759 A.2d 873 (App.Div.2000).
When the trial court (a different judge than the one who entered the order on this appeal) ordered defendant to pay $45 per week in child support in 2001, it noted that in determining this obligation: "Allowance has been made for extraordinary visitation expenses (based on an average expense of $500/month)." But when the court increased defendant's child support obligation to $243 per week in 2003, it did not give any recognition to the extra expenses defendant must incur to exercise his parenting time rights in Maine. Instead, the court granted defendant an allowance for only the variable expenses during the time he has the children, which the court found, as indicated by the child support worksheet, to be 18 overnights: ($395 ×.37 × 18/365 = $7.21). We perceive no reason for the court failing to make any additional allowance for the extra expenses defendant must incur to visit his children in Maine. Therefore, the case must be remanded to the trial court for a redetermination of defendant's child support obligation that takes into account those extra expenses.
Lastly, we conclude that the trial court did not abuse its discretion in requiring defendant to obtain $100,000 of life insurance to secure his child support obligation. See N.J.S.A. 2A:34-25; Jacobitti v. Jacobitti, 135 N.J. 571, 578, 641 A.2d 535 (1994); Davis v. Davis, 184 N.J.Super. 430, 436-39, 446 A.2d 540 (App.Div.1982).
Accordingly, we reverse the part of the October 6, 2003, order that requires defendant to pay plaintiff $243 per week for child support and remand the case to the trial court for a redetermination of this obligation. The order is affirmed in all other respects.
NOTES
[1] Judge Parrillo did not participate in the oral argument of this appeal. However, with the parties' consent, he has participated in the decision.
[2] Because defendant contends that his indemnification obligation to plaintiff was a marital debt subject to discharge under 11 U.S.C.A. § 523(a)(15), this debt falls within the literal terms of subparagraph (A). However, (a)(15) marital debts more properly fall under subparagraph (B). The leading commentator in the field of bankruptcy concludes that the omission of (a)(15) from subparagraph (B) was probably "inadvertent." 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 523.09 n. 2 (15th ed.2004). The reason (a)(15) should have been included in subparagraph (B) of (a)(3) is that this section requires not only the "timely filing of a proof of claim" but also a "timely request for a determination of dischargeability," which 11 U.S.C.A. § 523(c)(1) requires a creditor of an (a)(15) debt to file in order to obtain a determination excepting the debt from discharge. In any event, regardless of whether subparagraph (A) or (B) applies, for a debtor to be discharged from unscheduled debt, the creditor must have had "notice or actual knowledge" of the bankruptcy petition in time to make a timely filing.
[3] If there had been no property settlement agreement and plaintiff was solely a codebtor on the Citicorp mortgage, plaintiff would only have had a right to seek contribution from defendant, in accordance with 11 U.S.C.A. §§ 502(e) and 509, for the portion of the mortgage she paid in excess of her pro rata share. However, that was not the situation in this case because the property settlement agreement gave plaintiff an independent contractual right to indemnification under which she was to be held harmless for the entire mortgage obligation, thus putting her in the position of a creditor.