**In re Douglas SZCZEPANIK and
Lorraine Szczepanik,
Debtors.**

**Bankruptcy No. 090–71664–21.**

United States Bankruptcy Court,
E.D. New York.

Aug. 7, 1992.

Jeffrey Graham, Creditor, pro se.

Maurice White, Creditor, pro se.

Thomas F. Foy, Lundstedt & Foy, Centereach, N.Y., for debtors.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Pending before the Court are motions by Maurice White and Jeffrey Graham, creditors herein, for an order permitting them to file proofs of claim in this bankruptcy proceeding. The two creditors are Florida residents and are represented only by Florida counsel which has created difficulties for them and for the Court.

The basic facts as disclosed in the various documents submitted to this Court appear to be as follows:

One of the Debtors, Douglas Szczepanik, at one time was employed as a police officer by the City of Delray Beach, Florida Police Department.

The following facts are set forth in an "Order of Dismissal" issued by a judge of the Circuit Court for Palm Beach County, Florida, Criminal Division in a proceeding brought against Graham by the State of Florida. While Szczepanik was employed as a police officer, he stopped Graham for the traffic infraction of not having a warning flag displayed on a ladder which overhung the rear of his truck. This episode took place on or about March 24, 1986. When Graham asked Officer Szczepanik why he had been stopped, Officer Szczepanik struck him in the face with the aluminum box used to carry traffic citations. When Graham turned to walk away, Officer Szczepanik grabbed him by the arm and told him he was under arrest. A struggle ensued which terminated when another officer arrived on the scene and arrested Graham.

The Florida court dismissed a criminal indictment filed by the State of Florida against Graham based on these facts on June 5, 1987. The Florida Court said that the first and foremost reason it was dismissing the case against Graham "is that courts should never permit themselves to be perceived as condoning or endorsing police misbehavior of this kind."

White and Graham subsequently advised the City of Delray Beach, Chief of Police of the City of Delray Beach, Officer Szczepanik and other police officers that they were filing damage claims based on the actions of Officer Szczepanik and another officer. The papers presented to the Court do not disclose the nature of White's grievance against Szczepanik. Thereafter suit was brought in the United States District Court for the Southern District of Florida by White and Graham against numerous defendants, including Szczepanik and also by them against Szczepanik and other defendants in the Circuit Court of the 15th Judicial Circuit, in and for Palm Beach County, Florida.

On June 26, 1990, Mr. Szczepanik, having moved to New York, consulted Thomas F. Foy, Esq. with respect to filing a bankruptcy petition. Among the subjects discussed were "possible suits in litigation." (Statement Pursuant to Local Rule 10(f)).

On November 2, 1990, Mr. Szczepanik and his wife filed a joint petition under Chapter 7. Mr. Szczepanik described his occupation as that of a handyman, currently unemployed. Their schedules showed no non-exempt assets. Neither White nor Graham was listed as a creditor and the schedules make no reference to any pending lawsuit by them against Szczepanik.

Creditors were sent the standard notice advising them of the filing on November 2, 1990 of a petition by Mr. and Mrs. Szczepanik, informing them that there would be a first meeting of creditors on December 19, 1990 and that February 19, 1991 was the last day to file objections to the discharge of the debtor or to the dischargeability of any debt. Because the case was a no-asset case, creditors were advised that it was not necessary to file a claim. Neither White nor Graham received this notice because neither was on the list of creditors.

On December 21, 1990 the Trustee reported that there was no property in the estate available for distribution to creditors and asked that he be discharged. No objections to discharge or dischargeability were received, and on April 4, 1991, this Court signed an Order releasing the debtors from all dischargeable debts.

Less than one month later, the Szczepaniks' attorneys, Lundstedt & Foy, filed a proposed "Order to Amend Schedules," an "Application to Amend Schedules," a revised matrix, and revised schedules. The application sought leave to add three creditors: Daniel C. Wagner, Maurice White and Jeffrey Graham. The application furnished no reason why these creditors had been omitted from the original schedules. The only entity served with the proposed order to amend schedules and the other papers was the Chapter 7 Trustee, Edward Zinker.

On May 6, 1991, the Court signed an order authorizing the amendment of the debtors' schedules, as requested, and directed the debtors to serve a copy of the order on the added creditors, plus all previous notices sent by the Clerk of the Court

and, thereafter, to file with the Court proof that such service had been made. The Order extended, to July 5, 1991, the time of each of the added creditors to object to the discharge of the debtor or the dischargeability of the debt owed said creditor. Thereafter, Lundstedt & Foy filed an Affidavit of Service of the Order to Amend Schedules but no proof that service had been made, as ordered by the Court, of all notices earlier sent creditors by the Clerk of the Court.

According to the affidavit of service, Maurice White and Jeffrey Graham were served care of Gary E. Garbis, 701 S.W. 27th Avenue, Suite 1000, Miami, Florida 33135. Gary Garbis is elsewhere identified as the Florida attorney for Graham and White in the proceeding pending in the District Court for the Southern District of Florida.

On the same day, May 6, 1991, as the Court signed the order authorizing the amendment of the schedules to add White and Graham, the attorney for the Debtor Douglas Szczepanik filed in the United States District Court for the Southern District of Florida an answer and affirmative defenses to the lawsuit of White and Graham, reading in part:

> As and for a separate, distinct affirmative defense, this Defendant would allege that heretofore and on or about the thirtieth day of April, 1991, by way of Amended Schedule to Bankruptcy Proceeding in the Eastern District Court of New York, bearing Case No. 09071664–21, this Defendant has petitioned for bankruptcy and has listed the plaintiffs herein as creditors.

This is not accurate. The petition for bankruptcy was filed November 2, 1990, not April 30, 1991. This affirmation and answer were apparently served on two attorneys, Barry A. Dubinsky, Esq., not otherwise identified, and Gary E. Garbis, P.A. At the same time, on May 6, 1991, in the Federal and Florida courts in which lawsuits brought by White and Graham against Szczepanik were pending, Szczepanik moved for an order staying all proceedings against him based on the amendment of the schedules adding White and Graham as creditors.

Due to the overload in the Bankruptcy Clerk's Office, the Szczepaniks' bankruptcy proceeding remained open although it should have been closed after July 5, 1991 when the time of the added creditors to object to discharge and/or dischargeability expired.

· On March 26, 1992, this Court received from Maurice White and Jeffrey Graham what were described as "Motions for Late Filing of Claim, Order, Complaint and Attachments." The covering letter which was addressed to the undersigned, read in part:

> These papers were previously sent to your Honor, as well as, the clerk of the court and Thomas Foy, Esq. The Clerk's office returned the copies we filed because we needed to have a hearing date. Unfortunately we cannot afford to hire counsel to represent us in New York and are only able to represent ourselves. Furthermore, it would be an extreme hardship for us to fly up to New York for a hearing.
>
> It would be an injustice to allow Mr. Szczepanik to avoid civil liability for his unjust attack on us. It should be clear to your honor that Mr. Szczepanik committed an intentional tort on us and our claims are not dischargeable. We ask your Honor for relief in this matter. Please do not let Mr. Szczepanik escape justice through some legal loophole and our inability to afford New York lawyers.

In response to this letter, the Court scheduled a hearing for May 19, 1992 on the motions of White and Graham for an order permitting the filing out of time of proofs of claim for damages due to a willful and malicious assault. In the motion papers each creditor says that neither learned until February 18, 1992 that he had been listed on an application to amend schedules. These motions are the subject of the present Opinion.

The Court also docketed the papers labeled "Complaints" but advised the creditors that there was a $120 filing fee re-

quired for each complaint objecting to dischargeability and, therefore, the complaints would not be treated as having initiated adversary proceedings until the Clerk's Office received the requisite filing fee. On May 18, 1992, a check in the amount of $240 was received from Goldfarb & Lerman, P.A. On June 2, 1992, a summons and notice of a pre-trial conference was issued in each case. The pre-trial conferences were scheduled to take place on July 14, 1992 at 11:00 a.m. However, up to this point in time, this Court has not received proof of service of the summons and complaint from Goldfarb & Lerman[1] and on the scheduled pre-trial date no one appeared.

The complaints of Maurice White and Jeffrey Graham, like the motions, each assert that Officer Szczepanik willfully and maliciously assaulted the complaining creditor causing damages "in the sum of dollars yet to be determined." Each complaint refers to the civil action now pending in the United States District Court for the Southern District of Florida. (By error, the text of the complaint in the action brought by Graham against Szczepanik names Maurice White as the plaintiff although both the caption and the signature identify the complaint as brought by Jeffrey Graham.)

Although at the hearing held on May 19, 1992 on the creditors' motions no one appeared in opposition to the creditors' request to allow a late filing of claims, an affirmation in opposition was filed by Lundstedt & Foy. The affirmation notes that the Court's Order dated May 6, 1991 permitting the debtors to amend their schedules to include White and Graham gave those creditors until July 5th, 1991 to object to the debtor's discharge and takes issue with the creditors' statement in the motion papers that neither Graham nor White learned of the application to amend schedules until February 18, 1992. Foy points to the answer and to the motions for stay filed on May 6, 1991 and served on Garbis as proof that "both creditors received sufficient notice of the bankruptcy proceeding and the fact of their inclusion as creditors therein with ample time to object." (Foy Affirm. in Opp'n, Paragraph 6).

## DISCUSSION

The problem of the creditor who a debtor inadvertently, or deliberately, omits from his schedules is one which has given the bankruptcy courts much trouble and which periodically surfaces in a number of different contexts. Most bankruptcy schedules are prepared under time pressure because the bankruptcy is triggered by some outside event, like the garnisheeing of the debtor's salary or the pending foreclosure of his house. The attorneys who prepare them rely on the information furnished by

---

1. An objection to discharge or to the dischargeability of a particular debt is an adversary proceeding, Federal Rule of Bankruptcy Procedure 7001(4), (6), which is commenced by filing a complaint with the court. FRBP 7003.

FRBP 7004 makes applicable to adversary proceedings several subsections of Rule 4 of the Federal Rules of Civil Procedure, including subdivisions (d), (g) and (j). Upon the filing of the complaint, the clerk issues a summons and delivers it to the plaintiff or the plaintiff's attorney, *who shall be responsible for prompt service of the summons and a copy of the complaint,* FRCP 4(a), which should be served together. FRCP 4(d). The person serving the process shall, by affidavit, make proof of service thereof to the court promptly and in any event within the time during which the person served must respond to the process. FRCP 4(g).

FRBP 7004(f) provides that if service is made pursuant to Rule 4(d)(1)-(6) of the Federal Rules of Civil Procedure, it shall be made by delivery of the summons and complaint within 10 days following issuance of the summons, or if by mail, the summons and complaint shall be deposited in the mail within 10 days following issuance of the summons. It further states that if a summons is not timely delivered or mailed, another summons shall be issued and served.

FRCP 4(j) states that if service is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

When the first summons and complaint is not served within the 10 day limit imposed by FRBP 7004(f), another summons may issue if 120 days has not expired from the issuance of the earlier summons. *In re Mavellia,* No. 091–72003–21, 1991 WL 454439 (Bankr.E.D.N.Y. Dec. 3, 1991).

the debtors themselves. Debtors, in particular Chapter 7 debtors, tend to be unsophisticated and with inadequate records. It is not unusual in such circumstances for one or more creditors to be omitted accidentally from the schedules, i.e., a doctor's bill that does not surface for several months, a forgotten credit card charge. But there are omissions from the schedules that are less innocent. A particular persistent, or obstreperous, creditor may be omitted until the bankruptcy is well under way and the creditor's capacity to make difficulty has been substantially diminished.

The potentially obstreperous creditor cannot be entirely forgotten, however, if the debtor desires the debt to him to be discharged because Section 523(a) carves out from the discharge of an individual debtor any debt which is not listed or scheduled "with the name, if known to the debtor, of the creditor to whom such debt is owed" (1) in time to permit such creditor to timely file a proof of claim and, (2) if the debt falls into the category of certain types of nondischargeable debts to file a timely request for a determination of the dischargeability of such debt.[2]

■ The Federal Rules of Bankruptcy Procedure set very short time limits in Chapter 7 for filing proofs of claim in asset cases. In a Chapter 7 liquidation case, a proof of claim must be filed within 90 days after the first date set for the meeting of creditors called pursuant to Section 341(a) of the Code. Fed.R.Bankr.P. 3002(c). However, if it appears from the schedules that there will be no assets from which to pay a dividend, creditors will be advised that it is unnecessary to file a claim until notice is given them of the discovery of assets. Fed.R.Bankr.P. 2002(e). If a case begins as a no-asset case and assets are subsequently discovered, a proof of claim may be filed within 90 days after the clerk mails the creditors notice of that fact. Fed.R.Bankr.P. 3002(c)(5). The practical effect of these Rules is that in a no-asset case it is never too late to file a timely proof of claim.

Discharge and dischargeability raise different problems. In a Chapter 7 proceeding, a complaint objecting to the debtor's discharge is to be filed not later than 60 days following the first date set for the meeting of creditors. Fed.R.Bankr.P. 4004(a). An extension may be granted but only for cause on motion made before the time has expired. Fed.R.Bankr.P. 4004(b).

The time to object to the dischargeability of a specific debt depends on the reasons why the debt is not dischargeable. Section 523(a) excepts from discharge several categories of debt. Reference has already been made to the exception in Section 523(a)(3) for unscheduled debts. The only other exception relevant to the present motion is the exception in Section 523(a)(6) for any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. If a debt arises from willful and malicious injury it will nonetheless be dischargeable unless on request of the creditor to whom such debt is owed and after notice and a hearing the bankruptcy court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be. 11 U.S.C. 523(c)(1).

An objection to the dischargeability of a debt on the ground that it is covered by Section 523(d)(6) must be made by adversary proceeding brought in the bankruptcy court, filed not later than 60 days following the first date set for the meeting of creditors. Fed.R.Bankr.P. 4007, 7001(6). All creditors are to be given not less than 30

---

**2.** 11 U.S.C. § 523(a)(3) excludes from discharge any debt:

    neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

      (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

      (b) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

days notice of the time so fixed and for cause on motion made before the time is expired, the Court may extend the time for filing a complaint. Fed.R.Bankr.P. 4007(c). There is an important exception to the dischargeability of a debt due to the creditor's failure to bring a timely complaint objecting to discharge. Section 523(c)(1), the paragraph sanctioning discharge of a debt because no objection is made, begins "except as provided in subsection (a)(3)(B)"; the purpose of the exception is to carve out from the dischargeability of a debt falling within the nondischargeable category an unscheduled debt.

There is no agreement among the bankruptcy courts as to how to deal with the unscheduled creditor who the debtor wants to add after the time to object to dischargeability has expired. Because creditors are so frequently omitted from schedules for a variety of reasons, motions to add creditors are commonplace. Debtors seek to add creditors to their schedules both before and after a case is closed.

Federal Rule of Bankruptcy Procedure 1009(a) authorizes a debtor to amend his schedules as a matter of course at any time before the case is closed. It provides that notice of the amendment shall be given the trustee, and any entity affected thereby.

After a case is closed it may be reopened to add a creditor. 11 U.S.C. § 350(b) permits a bankruptcy case to be reopened "to administer assets, to accord relief to the debtor or for other cause." Some bankruptcy courts have refused to reopen a closed no-asset case for the purpose of adding a creditor on the ground that adding an omitted creditor is futile because it will not change the rights of the parties: the unscheduled debt was either discharged, despite the fact that it was not shown on the schedules, or excepted from discharge under Section 523(a)(3)(B) because the creditor was unable to file a timely request for a determination of dischargeability.

This view, however, was flatly rejected by District Judge Reena Raggi of this District who reversed an order of the Bankruptcy Court denying a debtor leave to reopen his Chapter 7 bankruptcy case for the purpose of listing an omitted creditor. *In re Candelaria*, 121 B.R. 140 (E.D.N.Y. 1990), *rev'g*, 109 B.R. 600 (Bankr.E.D.N.Y. 1990). Judge Raggi, analyzing the case before her, noted that since it was a no-asset case the time for filing claims remained open indefinitely until non-exempt assets were found and, therefore, Section 523(a)(3)(A) and (B) did not make the debt nondischargeable as a matter of law because the creditor had lost the opportunity to file a timely proof of claim.

Turning to the question of the requirement that a creditor holding a debt of the type described in paragraphs (2), (4) or (6) of Section 523(a) must be able to file a timely request for a determination of dischargeability, Judge Raggi approved allowing the added creditor a reasonable period of time in which to object to discharge or dischargeability. Judge Raggi agreed with the courts that held that when paragraph (2), (4) or (6) issues "are presented in a § 523(a)(3)(B) context, they are not subject to the restrictions of § 523(c) or, therefore, Rule 4007." *In re Candelaria, supra,* 121 B.R. at 145, *quoting, In re Lochrie,* 78 B.R. 257, 259 (Bankr. 9th Cir.1987). Remanding the matter to the bankruptcy court, Judge Raggi suggested that the bankruptcy court consider whether any evidence of fraud, recklessness or intentional design barred the reopening of debtor's bankruptcy proceedings and in the event only honest, unintentional mistake was present, then grant the motion to reopen to permit the debtor to add a creditor who then should be allowed an appropriate period of time to file any complaint objecting to discharge or dischargeability.

Following the procedure endorsed by Judge Raggi, debtors in this District are routinely permitted to add omitted creditors both before and after a case is closed provided notice is given the creditor to be added and no objection is received. Additional time is then furnished the added creditor to object to discharge or dischargeability. Superficially this appears to have been what was done in this case. However, the Court failed to observe that notice

of the proposed order adding White and Graham as creditors and extending their time to object to dischargeability was not served on either of the two creditors the debtor sought to add. Notice was served only on the Chapter 7 Trustee. Furthermore, many circumstances suggest that the original omission of these creditors was not an "honest unintentional mistake" and indeed the debtors in their application requesting amendment of their schedules do not claim that it was. They furnished no explanation for the fact that Graham's sizable claim which was already the subject of litigation was omitted from their schedules and Graham and his two lawsuits never mentioned.

Also casting doubt on the debtors' good faith is the fact that they did not recall the existence of Graham until their discharge was safely in hand. The prejudice done Graham and White by their original omission from the schedules might have been mitigated had Graham and White been sent, as the Court's Order provided, a notice of the order adding them and the various notices previously sent creditors by the Clerk of the Court. The purpose of the provision requiring that any added creditor be sent copies of all notices previously sent creditors by the Clerk of the Court, which the undersigned incorporates in all orders adding creditors, is to ensure that each such added creditor gets notice of the deadlines originally fixed for filing claims, for objecting to discharge and dischargeability, is advised of the name of the trustee appointed and of all that has taken place to date, including in this case, the discharge of the debtors. The proof of service subsequently filed with this Court by these debtors reflects that only service of the Court's Order, not of the notices sent by the Clerk, was sent an attorney (not the creditors) upon whom the debtors' attorney elected to effect service. Thus, there was no compliance of this Court's Order allowing the debtors to add the moving creditors to their schedules.

Service was never made on the moving creditors either of the application to amend the debtors' schedules or of the order permitting such amendment. The debtors claim that the person they served, Gary E. Garbis, with the order adding Graham and White as creditors, is the attorney for the creditors in the legal actions the creditors brought against Szczepanik in the federal and state courts. The Bankruptcy Rules require a debtor's schedule to list "the name and address of each creditor." Fed. R.Bankr.P. 1007(a)(1). An attorney's name is not an address. That Garbis represented the creditors in another court in connection with other matters did not make him the proper party to receive notice of the proceedings in the bankruptcy case. His representation could not be foisted on these creditors nor their interests made to depend upon what he chose to tell them or not. Furthermore, as has already been pointed out, not even Garbis was sent all the documents which the Court had directed, so that he had no way of determining what had already taken place in the bankruptcy court. Not only did Mr. Garbis not receive the information which the Court had ordered be provided, but the answer filed in the proceeding in which he was counsel gave a garbled and cryptic account of what had taken place in the bankruptcy court in New York.

Because of the failure to give White and Graham proper notice of the debtors' intention to add them as creditors and because of the failure to send them notice of the order signed by the Court and the failure to comply with the terms of that Order, that Order could not take the debt to Graham and White outside of Section 523(a)(3)(B). Neither was listed or scheduled in time to permit a timely request for a determination of dischargeability. Their situation is the same as though the Order authorizing their addition had never been signed.

What does that mean in terms of this bankruptcy proceeding from this point on? In the motions before the Court, all the two creditors are seeking is leave to file claims. Since there is no estate, filing a claim is an empty act; all that filing a claim accomplishes is to permit a creditor to participate in any distribution from an estate. In the *Candelaria* case cited earlier, Judge Raggi

said that she found persuasive the cases holding that in a no-asset Chapter 7 case the time for filing a claim does not expire within 90 days of the creditor's meeting, but remains open indefinitely until non-exempt assets are found. But, the creditors' motions to file claims must be granted and will be. *See, In re General Oil Distributors, Inc.,* 68 B.R. 603 (Bankr.E.D.N.Y. 1986); *In re Columbia Ribbon & Carbon Mfg. Co.,* 54 B.R. 714 (Bankr.S.D.N.Y. 1985).

■ The more serious question from the viewpoint of both the debtors and the moving creditors is whether the debts covered by Graham and White's claims are discharged. That is the subject of the two adversary proceedings which the creditors have attempted to initiate in this Court. However, the issue of the dischargeability of the debtors' debts to these two creditors need not be decided in this court. Had the debtors included these creditors in their original schedules, this Court would have exclusive jurisdiction of an objection to dischargeability under Section 523(a)(6), pursuant to Section 523(c)(1). But this Court does not have exclusive jurisdiction of the question whether a claim is excepted from discharge under Section 523(a)(3) because it is of the kind specified in Section 523(a)(2), (4), or (6) and was not scheduled in time to permit the creditor to make a timely request for a determination of the dischargeability of the debt owed him. *In re Bowen,* 102 B.R. 752, 754 (Bankr. 9th Cir.1989) ("dischargeability questions under § 523(a)(3) are the type over which the bankruptcy court has concurrent, but not exclusive jurisdiction"). That courts other than the bankruptcy court have jurisdiction to pass on dischargeability where Section 523(a)(3) is involved is explained in *In re Haga,* 131 B.R. 320, 326 (Bankr.W.D.Tex. 1991):

> Dischargeability actions under § 523(a)(2), (4), or (6) are core proceedings under 28 U.S.C. § 157(b)(2)(I). Section 523(c) requires that the bankruptcy court determine actions brought under subsections (a)(2), (4), or (6), and Rule 4007(c), which implements § 523(c) mandates that such actions be filed within 60 days following the first date set for the meeting of creditors. The combined effect of § 523(c) and Rule 4007(c) is to grant the bankruptcy court exclusive jurisdiction to determine dischargeability of § 523(a)(2), (4), or (6) debts so long as they are timely filed. *See* Advisory Committee Note to Rule 4007(c). However, jurisdiction is not exclusive for actions brought under § 523(a)(3) because the bankruptcy court shares concurrent jurisdiction with other forums to try such claims. Further, there is no time limitation for bringing actions under § 523(a)(3). *See* Rule 4007(b). Thus, actions under § 523(a)(3) can be urged either in bankruptcy or in state court.

*In re Haga,* at 326 (citations omitted).

The type of claim made by Graham in the pending litigation against Mr. Szczepanik in Florida courts appears to be "of a kind specified in paragraph ... (6)" of section 523(a)(2), because it arises out of malicious and willful injury by the debtor to Graham. Whether the debt to White is of the same character does not appear from the present record, but that will have to be determined by whatever court ultimately must decide dischargeability.

Because this Court does not have exclusive jurisdiction of the issue of dischargeability under Section 523(a)(3), the creditors are free to litigate dischargeability in the United States District Court for the Southern District of Florida where the discharge issued by this Court has apparently already been pleaded as an affirmative defense. The creditors may also litigate the issue in the Florida state courts. The procedure is well laid out in *Haga:*

> The debtor's discharge is an affirmative defense which establishes a *prima facie* defense to any claim brought against him based on a debt existing at the time of the bankruptcy filing. Therefore, the creditor has the burden of proving that its debt is excepted from discharge under § 523(a)(3)(B). But, the debtor has the burden to show that the creditor comes within the "unless" exception to § 523(a)(3)(B), i.e., that the creditor had notice or actual knowledge of the case in

**914**

time to file a proof of claim and request for a determination of dischargeability. If the debtor fails in that burden the creditor's lack of notice or actual knowledge is established, then the creditor must show that it has a viable or colorable claim that its "debt is of a kind specified in paragraph (2), (4) or (6)" of § 523(a). The debtor then has the burden to rebut that showing.

131 B.R. at 327.

■ Applying that analysis to the proceeding now pending in the United States District Court for the Southern District of Florida, to the extent that the defendant Szczepanik relies on the discharge issued by this Court as an affirmative defense the burden of proof that their debts are excepted from discharge under Section 523(a)(3)(B) shifts to White and Graham. They have to prove that they had no notice or actual knowledge of the Szczepaniks' bankruptcy in time to file a request for determination of dischargeability and they also have to show that they have a viable or colorable claim to a debt excepted from discharge under Section 523(a)(6) as a debt arising out of willful and malicious injury.

Without anticipating what the District Court for the Southern District of Florida may do in the litigation pending before it, the resolution of these questions cannot be affected by whether or not the creditors are given leave to file a claim in this pending proceeding and whether or not they exercise such right. Whether or not they had notice or actual knowledge of a case in time to file a request for determination of dischargeability is a factual inquiry which will turn on whether or not as the creditors now assert, they did not learn of the pending bankruptcy until February 18, 1992, long after the time to file a timely request for dischargeability was fixed when the debtors filed and even long after the time, July 5, 1991, set in the Order authorizing their addition as creditors but never sent them.

The creditors may litigate the same issue in this Court in the adversary proceedings they have begun, but since they have never served the complaint and since they find litigating in this Court difficult as demonstrated by their failure to attend the pretrial conference, they would be better off litigating dischargeability in Florida in either of the two pending cases between them and Szczepanik. In that event, they may wish to dismiss their adversary proceedings as permitted by Federal Rule of Bankruptcy Procedure 7041. Even if the creditors do not care to dismiss voluntarily, this Court may dismiss *sua sponte* for lack of prosecution, but unfortunately the filing fees cannot be returned.