**In re: Albert and Jo Ann CANDIDUS, Debtors.**

**No. 190–14143–JF.**

United States Bankruptcy Court, E.D. New York.

July 15, 2005.

Jones & Associates, New York, NY, By Roland Gary Jones, Esq., for Debtors.

LaMonica Herbst & Maniscalco, LLP, Wantagh, By Joseph S. Maniscalco, Esq., for Benedetta Sinnona.

### DECISION AND ORDER DENYING MOTION TO REOPEN BANKRUPTCY CASE

JEROME FELLER, Bankruptcy Judge.

This contested matter involves the dischargeability of unscheduled debt in a Chapter 7 case. The Chapter 7 case was commenced in 1990 and a discharge order was issued in 1991. In 1996, the unscheduled creditor sued to recover the unscheduled debt in state court. The discharge was asserted as an affirmative defense in the ensuing state court litigation. The state court rejected the defense and determined that the unscheduled debt was excepted from discharge. A judgment was thereafter entered in favor of the unscheduled creditor. The pending litigation is driven by efforts to halt enforcement of that judgment. Albert and Jo Ann Candidus (the "Debtors") believe i) the unscheduled debt was discharged by the 1991 discharge order, ii) the state court determination of nondischargeability is a nullity, and iii) the state court judgment is void.

Before the Court is the Debtors' motion to reopen their Chapter 7 case to obtain a clarification of the discharge order or, in the alternative, authorization to commence an adversary proceeding to determine the dischargeability of unscheduled debt ("Motion"). For the reasons hereinafter set forth, we are either unable or unwilling to accord relief to the Debtors because of, among others reasons, jurisdictional and equitable considerations.

The *Rooker–Feldman* doctrine precludes this Court from reviewing the state court adjudication of nondischargeability. The state court is a judicial tribunal with concurrent jurisdiction to determine the dischargeability of debt not scheduled in bankruptcy cases. After losing in the state court, the Debtors cannot have the state court's adjudication reviewed by this Court. Moreover, even if we were to assume that the *Rooker–Feldman* doctrine does not apply in these circumstances, the equitable precept of laches renders re-examination inappropriate.

### I.

The story starts long ago. On February 15, 1989, the Debtors purchased real property located at 102 Milton Street in Brooklyn, New York ("Property"). The seller was Benedetta Sinnona ("Sinnona"). The purchase was financed by GreenPoint Sav-

ings Bank ("GreenPoint") and Sinnona. Two promissory notes were issued by the Debtors, one to GreenPoint in the amount of $229,000 and the second to Sinnona in the amount of $58,000 ("Sinnona Debt"). Both notes were secured by mortgages on the Property.

About seventeen months after the purchase of the Property, on September 27, 1990, the Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code. The Sinnona Debt was not scheduled and Sinnona was not listed as a creditor. The first date set for the meeting of creditors under 11 U.S.C. § 341(a)[1] was November 7, 1990. January 7, 1991, was fixed as the last day for the filing of objections to discharge and for the filing of complaints to determine dischargeability of debts of the kind specified in § 523(c). All scheduled creditors were given notice of the bankruptcy filing and the aforementioned dates. No objections to discharge or complaints objecting to dischargeability were filed. A first meeting of creditors was actually held on February 4, 1991; the Debtors were examined and the meeting was closed. On March 3, 1991, the Chapter 7 trustee filed a no asset report. An order discharging the Debtors was entered on June 7, 1991 ("Discharge Order"). The case was closed on July 2, 1991.

In August 1991, the Debtors filed a petition under Chapter 13 of the Bankruptcy Code, presumably to deal with the mortgages on the Property. This effort was short lived as the Debtors lacked the ability to fund their Chapter 13 plan. The Chapter 13 case was dismissed in October 1991. Mortgage foreclosure proceedings ensued, and on June 25, 1992, GreenPoint obtained a judgment of foreclosure and sale. In January 1993, the Property was sold at a public auction for a price insufficient to satisfy the subordinate mortgage held by Sinnona.

In or about March 1996, Sinnona sued the Debtors on the promissory note in New York State Supreme Court, Kings County, *Benedetta Sinnona v. Albert B. Candidus and Jo Ann E. Candidus,* Index # 8374/96 ("State Court Action"). At the time, Sinnona was still unaware of the Debtors' bankruptcy filing and without knowledge of the Discharge Order. The Debtors appeared in the State Court Action, opposed the lawsuit, and raised, among other things, the Discharge Order as an affirmative defense. On September 30, 1997, the state court issued a memorandum opinion granting Sinnona's contested motion for summary judgment. The state court, citing two bankruptcy cases, *In re Thompson,* 177 B.R. 443 (Bankr.E.D.N.Y.1995) and *Adam Glass Serv., Inc. v. Federated Dep't Stores,* 173 B.R. 840 (E.D.N.Y.1994), rejected the affirmative defense of a discharge in bankruptcy as being "without merit" because "[p]laintiff was never named as [a] creditor in the bankruptcy proceedings and thus, the [Sinnona Debt] which is the basis of this lawsuit was not discharged" ("State Court Adjudication"). Having prevailed in her lawsuit, a judgment was entered in the sum of $90,570.89 on April 17, 1998 and docketed by Sinnona on that date in Kings County ("State Court Judgment"). Apart from two motions to vacate the State Court Judgment, both of which were withdrawn, the Debtor never sought relief in the state court from the State Court Adjudication by way of appeal, rehearing, reconsideration or otherwise.

---

1. Unless otherwise indicated, all statutory references are to the Bankruptcy Code, codified in Title 11 of The United States Code.

In January 1998, the Debtors filed a motion to reopen their Chapter 7 case, which by that time had been closed for over six years. The purpose of the reopening was to add Sinnona as a creditor and to file a complaint to determine the dischargeability of the Sinnona Debt. We granted the motion, but the Debtors never filed a complaint.[2] Over the next five and a half years, the Debtors filed five additional motions to reopen their Chapter 7 case to deal with the Sinnona Debt. After numerous adjournments, three of these motions were withdrawn and another was removed from the calendar due to defective papers. The motion now before the Court was filed on August 4, 2004, some fifteen and a half years after the events giving rise to the Sinnona Debt.

## II.

The unhelpful, thoroughly confusing and oft times utterly opaque submissions by the litigants make necessary a brief presentation of the nature and scope of a chapter 7 discharge to clear the air. Such discussion involves an examination of the interface between various statutory provisions and implementing federal bankruptcy rules.

Section 727(b) defines the breadth of a Chapter 7 discharge. That section discharges the debtor from all debts that arose before the order for relief, except as provided in § 523. Section 523, in turn, provides that "[a] discharge under section 727 ... does not discharge an individual debtor from any debt" described in the nineteen paragraphs comprising subsection (a) of § 523. Those nineteen paragraphs, i.e., § 523(a)(1)-(a)(19), enumerate the debts that are excluded from a debtor's discharge, which is otherwise all-inclusive.

There are four categories of debt excepted from discharge under § 523(a) that warrant special attention. Three of the categories are set forth in § 523(a)(2), (4) and (6), and encompass claims arising out of i) actual fraud, false pretenses or false representations (§ 523(a)(2)), ii) fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny (§ 523(a)(4)), and iii) willful or malicious injury to person or property (§ 523(a)(6)) (hereafter often collectively referred to as "intentional tort debts").[3] What is so special about the intentional tort debts is that they will be automatically discharged, unless the creditor files a complaint in the bankruptcy court to determine their dischargeability within a strict time limit of 60 days from the date first set for the meeting of creditors. *See* 11 U.S.C. § 523(c); Fed. R. Bankr.P. 4007(c). Section 523(c) also grants the bankruptcy court exclusive jurisdiction to determine the dischargeability of the intentional tort debts. *See* Fed. R. Bankr.P. 4007 advisory committee's note (1983); 4 *Collier on Bankruptcy* ¶ 523.26[1] at 523–129 (15th ed. rev.2004).

These time and jurisdictional limitations do not apply to any of the other fifteen categories of debt excepted from discharge under § 523(a), including § 523(a)(3). A complaint to determine dischargeability of debts other than intentional tort debts may be filed at any time. Fed. R. Bankr.P. 4007(b). Jurisdiction to deter-

---

**2.** The motion was unopposed, and the Court was not mindful of the State Court Adjudication a few months earlier.

**3.** The fourth category is contained in § 523(a)(15). Section 523(a) was amended in 1994 to add certain marital debts, as paragraph 15, to the dischargeability exceptions that warrant special attention. Since marital debt is not implicated by the Motion before the court, we make no further reference to that provision.

mine dischargeability of these categories of debt is held concurrently by the bankruptcy court and any appropriate non-bankruptcy forum. *See* 28 U.S.C. § 1334(b); Fed. R. Bankr.P. 4007 advisory committee's note (1983).

Whether or not a debt is listed or scheduled by a debtor may have a bearing on the dischargeability of that debt. One of the other fifteen categories of debt excepted from discharge under § 523(a) is debt "neither listed nor scheduled" in the bankruptcy petition. 11 U.S.C. § 523(a)(3). However, this exception to dischargeability is applicable in only two situations. First, § 523(a)(3)(A) excepts unscheduled debt from discharge, where the creditor, due to the absence of notice or actual knowledge of the bankruptcy filing, failed to file a timely proof of claim. A timely proof of claim is crucial to a creditor's right to participate in a Chapter 7 distribution of assets and § 523(a)(3)(A) protects that right. Second, § 523(a)(3)(B) excepts unscheduled debt from discharge, where the creditor, due to the absence of notice or actual knowledge of the bankruptcy filing, failed to timely exercise his right to obtain a dischargeability determination of debts "of a kind specified in" § 523(a)(2), (4), or (6). Thus, § 523(a)(3)(B) protects the right of an unscheduled creditor to obtain a determination of nondischargeability of intentional tort debts, and helps vouchsafe the public policy that debts discharged in a Chapter 7 case are only debts honestly incurred.

### III.

The Debtors seek to reopen their Chapter 7 case to obtain a clarification of the Discharge Order entered in 1991. The Debtors would have us believe that the matter is not complicated at all. They contend that the Discharge Order, which was entered under § 727(b), acts as a discharge of all debts, including the Sinnona Debt. As such, the Discharge Order, according to the Debtors, operated as an injunction barring Sinnona from commencing the State Court Action and rendered the State Court Judgment void under § 524(a).

■ Simplistic solutions to difficult problems are, as here, invariably wrong. Debtors such as Albert and Jo Ann Candidus who fail to list a creditor, in effect, forfeit the jurisdictional and time-limit protections of § 523(c) and Fed. R. Bankr.P. 4007(c) in respect to that creditor. *See, e.g., In re Strano,* 248 B.R. 493, 502 (Bankr.D.N.J.2000); *Irons v. Santiago (In re Santiago),* 175 B.R. 48, 51 (9th Cir. BAP 1994); *Am. Standard Ins. Co. of Wisconsin v. Bakehorn,* 147 B.R. 480, 484 (N.D.Ind.1992); *In re Mendiola,* 99 B.R. 864, 868 n. 6 (Bankr.N.D.Ill.1989). Where, as here, debtors fail to schedule debt, Fed. R. Bankr.P. 4007(b) specifically affords the creditor the right to litigate the dischargeability of alleged intentional tort debt outside the prescribed time limits. *See In re James,* 184 B.R. 147, 150 (Bankr.N.D.Ala. 1995).

The Debtors, however, argue that the Sinnona Debt raises no litigable dischargeability issue because their Chapter 7 case was a no asset, no bar date case, and that therefore § 523(a)(3)(A) was not triggered. *See, e.g., Zirnhelt v. Madaj (In re Madaj),* 149 F.3d 467 (6th Cir.1998); *Judd v. Wolfe,* 78 F.3d 110 (3rd Cir.1996); *Beezley v. California Land Title Co. (In re Beezley),* 994 F.2d 1433 (9th Cir.1993). This argument is besides the point. Sinnona believes she was defrauded by the Debtors. However, because the Sinnona Debt was not scheduled by the Debtors, she received no notice of the January 7, 1991 deadline for the filing of complaints in the bankruptcy court to determine dischargeability of alleged intentional tort debts un-

til long after that time passed. As indicated above, Sinnona did not learn of the Debtors' bankruptcy filing until she commenced a state court action to enforce her claim in 1996.

■■■ Generally, a creditor with an alleged intentional tort debt must initiate a proceeding in the bankruptcy court to determine the dischargeability of that debt within a specific time period. 11 U.S.C. § 523(c); Fed. R. Bankr.P. 4007(c). In the event the creditor fails to file a complaint within the time limit, the debt will be automatically discharged by statutory fiat. *See* 11 U.S.C. § 727(b); Fed. R. Bankr.P. 4004(c). The discharge of intentional tort debt by mere expiration of time, without action by a creditor, is contingent upon the creditor being given notice, or otherwise obtaining knowledge of the bankruptcy filing, so as to be able to file a timely complaint. If the debtor fails to list a creditor on his schedule of liabilities, the creditor will not receive notice of the bar date and, absent knowledge from any other source, the creditor would be prejudiced by being unable to file a timely complaint. Under this scenario, § 523(a)(3)(B) provides that unscheduled intentional tort debts are not discharged. The issue then is whether the particular debt is an intentional tort debt within the rubric of § 523(a)(3)(B). For sure, it cannot be assumed that a particular debt is excepted under § 523(a)(3)(B) from a general discharge entered under § 727(b). Accordingly, a judicial determination in the nature of a declaratory judgment determining the dischargeability of the debt is required. *See Keenom v. All Am. Mktg. (In re Keenom),* 231 B.R. 116, 125 (Bankr.M.D.Ga.1999); *In re Anderson,* 72 B.R. 495, 496–97 (Bankr.D.Minn.1987).

■■■ There are four avenues to obtain a judicial determination of dischargeability post-discharge and case closure: i) if the creditor pursues a lawsuit on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over the lawsuit can decide whether the debt falls within any of the exceptions to discharge, ii) the debtor may be able to remove the collection effort to the bankruptcy court, iii) either the debtor or the creditor can move to reopen the bankruptcy case pursuant to Fed. R. Bankr.P. 4007(b) for the purpose of filing a complaint to determine dischargeability, and iv) the debtor can bring an action against the creditor in the bankruptcy court to enforce the § 524(a)(2) discharge injunction. *Strano,* 248 B.R. at 503; *James,* 184 B.R. at 150–51; *Mendiola,* 99 B.R. at 870.

The Debtors opted for the affirmative defense route in the State Court Action, and were unsuccessful. The state court determined that the affirmative defense of discharge was without merit and that the Sinnona Debt was excepted from the Discharge Order. Upon that determination, there is nothing for this Court to clarify.

## IV.

■■■ In the alternative, the Debtors seek to reopen their Chapter 7 case to obtain authorization to commence an adversary proceeding to determine the dischargeability of the Sinnona Debt. This relief is precluded by the *Rooker–Feldman* doctrine. Under the *Rooker–Feldman* doctrine, "lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir.1998); *see also Epps v. Creditnet, Inc.,* 320 F.3d 756, 759 (7th Cir.2003) (A federal court action whose success "would require overturning the state court decision, is barred by the *Rooker–Feldman* doctrine."); *Kro-*

pelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir.2002) (the Rooker–Feldman doctrine teaches that "lower federal courts lack subject matter jurisdiction over claims that effectively challenge state court judgments.").

■ The Rooker–Feldman doctrine springs from two United States Supreme Court cases decided sixty years apart. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). These two cases give effect to the principle that lower federal courts have only original subject matter jurisdiction, and for this reason may not entertain direct or collateral attacks on a state court judgment. Singleton v. Fifth Third Bank of Western Ohio (In re Singleton), 230 B.R. 533, 536 (6th Cir. BAP 1999). "Only the [United States] Supreme Court [is] authorized to review on direct appeal the decisions of state courts." Alt. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). Accordingly, "when a state court has jurisdiction to decide a federal question, a [lower federal court] has no subject matter jurisdiction to review the state court's decision on that question." Beardslee v. Beardslee (In re Beardslee), 209 B.R. 1004, 1010 (Bankr. D.Kan.1997).

■ The bankruptcy courts and state courts have concurrent jurisdiction to determine the dischargeability of unscheduled debts. First Nat'l. Ins. Co. of Am. v. Bartomeli (In re Bartomeli), 303 B.R. 254, 269 (Bankr.D.Conn.2004); In re McGregor, 233 B.R. 406, 408 (Bankr. S.D.Ohio 1999); In re Massa, 217 B.R. 412, 419 (Bankr.W.D.N.Y.1998), aff'd, 187 F.3d 292 (2nd Cir.1999); Fidelity Nat'l. Title Ins. Co. v. Franklin (In re Franklin), 179 B.R. 913, 924 (Bankr.E.D.Cal.

1995); Adam Glass Serv., Inc., 173 B.R. at 843; In re Szczepanik, 146 B.R. 905, 913 (Bankr.E.D.N.Y.1992); In re Thibodeau, 136 B.R. 7, 10 (Bankr.D.Mass.1992); In re Guzman, 130 B.R. 489, 491 (Bankr. W.D.Tex.1991). In fact, a discharge in bankruptcy is a recognized affirmative defense under state law. See, e.g., N.Y. C.P.L.R. § 3018(b) (McKinney 2005).

The state court acquired jurisdiction over whether the Sinnona Debt was discharged when the Debtors raised the Discharge Order as an affirmative defense in the State Court Action. The Debtors' remedy from the adverse State Court Adjudication was to seek reconsideration or appellate review in the state court. This Court cannot be substituted as an appellate forum. Where, as here, a state court assumes and exercises jurisdiction to determine that an unscheduled debt is nondischargeable, the Rooker–Feldman doctrine is applicable and a bankruptcy court is devoid of jurisdiction to correct a possible erroneous determination. As the Supreme Court in Rooker observed:

> If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely [state court] appellate proceeding.
>
> . . . . .
>
> A reading of the entire bill shows indubitably that there was full jurisdiction in the state courts and that the bill at best is merely an attempt to get rid of the judgment for alleged errors of law committed in the exercise of that jurisdiction.

263 U.S. at 415–16, 44 S.Ct. 149; see also Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J. concurring) ("Where federal relief can only be predicated upon a conviction that the state court was wrong, it is

difficult to conceive the federal proceeding as, in substance, anything other than a [*Rooker–Feldman*] prohibited appeal of the state-court judgment."); *Kropelnicki*, 290 F.3d at 129 (holding that "if adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void" then adjudication of that claim by a federal court would violate the *Rooker–Feldman* doctrine).

The Debtors' arguments asserting the inapplicability of the *Rooker–Feldman* doctrine are, at best, blurry. We will nonetheless attempt to put them in their best light. What the Debtors seem to suggest is that the Bankruptcy Code contains a statutory exception to the *Rooker–Feldman* doctrine. Section 524(a)(1), in relevant part, states as follows:

> (a) A discharge in a case under this title-
>
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . .

The plain language of § 524(a)(1) provides that any judgment is void if it is a determination of the personal liability of a debtor with respect to a discharged debt. On this premise, the Debtors assert that the State Court Judgment is void because the Discharge Order when entered encompassed all debts, including unscheduled debts. Since, according to the Debtors, the State Court Judgment is statutorily void and the State Court Adjudication of nondischargeability upon which it is based is a nullity, the *Rooker–Feldman* doctrine is not triggered, and this Court has subject matter jurisdiction to determine the dischargeability of the Sinnona Debt.

This argument fails because of a fundamental flaw in its underlying premise. The Discharge Order did not automatically discharge the Sinnona Debt. As shown above, the applicability of § 523(a)(3)(B) was necessarily overhanging the Discharge Order when it was entered. No determination had been made by this Court or a non-bankruptcy forum with concurrent jurisdiction that the Sinnona Debt was discharged. The discharge of the Sinnona Debt was inchoate, awaiting a judicial determination of its status. Once the state court exercised its concurrent jurisdiction and determined that the Sinnona Debt was nondischargeable, the *Rooker–Feldman* doctrine prevents this Court from reviewing that determination.

The Debtors further argue that the State Court Adjudication was in error and that, under § 524(a)(1), this Court has the power to void the State Court Judgment to the extent it construed the Discharge Order incorrectly.[4] There is decisional authority in support of the proposition that, in light of § 524(a)(1), a bankruptcy court can declare void a state court determination if that court construes a bankruptcy discharge wrongly. *In re Dabrowski*, 257 B.R. 394, 406 (Bankr.S.D.N.Y.2001); *In re Cruz*, 254 B.R. 801, 811–12 (Bankr. S.D.N.Y.2000); *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 783 (9th Cir. BAP 1999). On the other hand, there are cases holding that the *Rooker–Feldman* doctrine, a teaching based upon the constitutional principal of federalism, precludes a bankruptcy court from sitting in appellate review of a state court ruling

---

4. We express no views on whether or not the State Court Adjudication of nondischargeability was correct other than pointing out that, based upon the bankruptcy court cases cited by the state court in its decision, the state court was quite cognizant of 11 U.S.C. § 523(a)(3) and its subparts.

on dischargeability through its concurrent jurisdiction. *Ferren v. Searcy Winnelson Co. (In re Ferren)*, 203 F.3d 559 (8th Cir. 2000); *In re Toussaint*, 259 B.R. 96, 104 (Bankr.E.D.N.C.2000); *Massa*, 217 B.R. at 421.

■■■■ This court believes that the better view is espoused by the latter group of cases holding that when a state court with concurrent jurisdiction adjudicates the issue of dischargeability, the *Rooker–Feldman* doctrine bars the bankruptcy court from sitting in review of that judgment. A state court has the power to interpret federal law and such interpretation is authoritative. *See Lockhart v. Fretwell*, 506 U.S. 364, 376, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (Thomas, J. concurring). The *Rooker–Feldman* doctrine is anchored in the recognition that, among other things, state courts are just as obligated and competent as federal courts to decide federal questions. *See In re Audre, Inc.*, 202 B.R. 490, 495 (Bankr.S.D.Cal. 1996) (*citing Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1142 (2d Cir.1986), *rev'd on other grounds*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)). Under the *Rooker–Feldman* doctrine, when a state court has jurisdiction to decide a federal question, a bankruptcy court, like any other federal court, has no subject matter jurisdiction to review the state court's determination on that federal question. *See Massa*, 217 B.R. at 421. Moreover, the power of a state court to decide an issue ordinarily connotes the power to decide it incorrectly, with any erroneous result being enforceable, unless corrected on appeal or otherwise within the state court system. Permitting the bankruptcy court to second guess a state court ruling on dischargeability would result in an anomaly. If the state court construes the discharge correctly, the judgment will be enforced and immunized from federal court challenge.

If, however, the state court construes the discharge incorrectly, the judgment may be void and subject to collateral attack in federal court. This makes little sense. As one court emphasized:

> Once the debtors choose a forum and that court renders judgment, the debtors cannot then run to the other forum if the result is incorrect. They must pursue reconsideration or appellate review for that forum.
>
> A state court judgment might be void ab initio if it tried to assert jurisdiction over a case falling under the exclusive jurisdiction of the bankruptcy courts. However, once the state court exercises concurrent subject matter jurisdiction and renders judgment, the state court judgment is at worst erroneous, not void ab initio, and the bankruptcy court lacks jurisdiction to collaterally attack the decision. The only way a bankruptcy court could procedurally review that judgment would be to, in effect, sit as an appellate court over the state trial court. This is exactly what the *Rocker–Feldman* doctrine prohibits.

*Toussaint*, 259 B.R. at 102–03.

### V.

■■■ Even if we were to assume that this Court has jurisdiction to, in effect, review a nondischargeability determination by a state court in the exercise of its concurrent jurisdiction, we would nonetheless deny the Debtors' Motion on equitable grounds. The events giving rise to the Sinnona Debt occurred in early 1989. In September 1990, the Debtors initiated their Chapter 7 case and omitted the Sinnona Debt, a substantial obligation, from their schedules. The Discharge Order was issued in June 1991. From that time onward, the Debtors did nothing with regard to the Sinnona Debt until in or around March 1996, when they asserted the 1991 discharge as an affirmative defense in the

State Court Action. After losing the state court battle in September 1997, they then made a number of clumsy, futile efforts over a period of many years to bring the dischargeability issue before the bankruptcy court. It was not until August 2004 that the instant Motion was filed. The Debtors could have reopened the bankruptcy case to obtain a determination of dischargeability under § 523(a)(3)(B) at any time, without even the payment of a filing fee. Fed. R. Bankr.P. 4007(b). Yet, the Debtors tarried over fifteen years after the events that gave rise to the Sinnona Debt before they commenced a process to bring the issue of the Sinnona Debt's dischargeability before the Court.

 Equitable principles underlie the administration of bankruptcy cases. The doctrine of laches is defined as "[t]he equitable doctrine by which a court denies relief to a claimant who has unreasonably delayed in asserting the claim, when that delay has prejudiced the party against whom relief is sought." *Black's Law Dictionary* 891 (8th ed.2004). Sinnona, who was not even aware of the Debtors' bankruptcy case until March 1996, has been sorely prejudiced by the substantial delay. It would be unfair to burden her with the difficulty of litigating § 523(a)(3)(B) issues after memories have long faded, witnesses have disappeared and evidence lost. Furthermore, bankruptcy courts should be spared the litigation of stale claims. The time it took the Debtors to seek a determination of the Sinnona Debt's dischargeability in this Court is well beyond any common sense definition of reasonableness.

## VI.

Based upon all of the foregoing, the Debtors' motion under § 350(b) to reopen their Chapter 7 case to obtain a clarification of this Court's June 1991 Discharge Order or, in the alternative, authorization to commence an adversary proceeding to determine the Sinnona Debt's dischargeability, is denied.

IT IS SO ORDERED.